574 So.2d 1079 (1991)
James Randall PENN, Appellant,
v.
STATE of Florida, Appellee.
No. 74123.
Supreme Court of Florida.
January 15, 1991.
Rehearing Denied March 4, 1991.
*1080 Nancy Daniels, Public Defender and W.C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
James Randall Penn appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Although we affirm Penn's conviction, we vacate his death sentence and remand for imposition of life imprisonment with no possibility of parole for twenty-five years.
Penn, who was estranged from his wife, and his two-year-old son moved into his mother's home less than two weeks before this murder. On the night in question Penn brought his son back to the house late in the evening and put him to bed, apparently after his mother was asleep. He then left the house looking for drugs to buy, returned to the house and took a bottle of liquor, left again, and then came back and stole some jewelry from the bedroom where his mother was sleeping. Later, he returned yet again, took a hammer from the laundry room, beat his mother to death, and stole numerous items from the house. Penn purchased items with his mother's credit cards and pawned items stolen from her home. The state produced witnesses to those transactions who testified that Penn did not appear to be intoxicated. Penn did not testify, but, after his arrest the following day, he made four confessions. In those confessions, among other things, he said he stole his mother's property so that he could exchange it for crack cocaine and that he had consumed six or seven pieces of the drug during the night and had been under the drug's influence up to the time of his arrest. The state indicted him for first-degree murder and robbery with a deadly weapon. The jury convicted him of grand theft and first-degree murder and recommended that he be sentenced to death, which the trial court did.
During jury selection, the judge denied Penn's challenge for cause of two prospective jurors, and Penn used peremptory challenges to remove them from the panel. After Penn exhausted his allotted peremptory challenges, he requested ten more, based on the prospective jurors' knowledge of the case.[1] The state objected, and the judge denied the request for more peremptory challenges. Now, Penn argues that he should receive a new trial because the judge improperly denied the two challenges for cause, thereby forcing him to use two peremptory challenges. We disagree.
The first prospective juror indicated that he strongly favored the death penalty. On further questioning by the judge and prosecutor, however, he said he would follow the law as instructed. The second prospective juror stated that, because her father was *1081 an alcoholic, she did not have much sympathy for people who had voluntary chemical dependencies. She acknowledged, however, that a person could be so intoxicated as not to know what he was doing and stated that she would follow the court's instructions. We find no abuse of the trial court's discretion in refusing to excuse these prospective jurors for cause because they ultimately demonstrated their competency by stating that they would base their decisions on the evidence and instructions. Pentecost v. State, 545 So.2d 861 (Fla. 1989); Cook v. State, 542 So.2d 964 (Fla. 1989).
Even assuming that the court erred in refusing to excuse these prospective jurors, however, we would find such error harmless because Penn has shown no prejudice, i.e., that he had to accept an objectionable juror. This Court has long held
that the action of the court in holding a juror to be qualified over defendant's objection works no injury to the accused if the objectionable venireman does not serve, even though the accused exhausted his statutory number of peremptory challenges, when it does not also appear that any objectionable juror was selected after the defendant's challenges were exhausted. The reason given for the rule is that the accused has a right to an impartial jury but is not entitled to any particular persons as jurors.
In a case where an objectionable juror is challenged by the defendant for cause and the court wrongfully overrules the challenge and the defendant uses one of his peremptory challenges to excuse the objectionable venireman, the record should show that the jury finally impaneled contained at least one juror objectionable to the defendant, who sought to excuse him peremptorily but the challenge was overruled.
Young v. State, 85 Fla. 348, 354, 96 So. 381, 383 (1923). Accord Trotter v. State, No. 70,714 (Fla. 1990); Floyd v. State, 569 So.2d 1225 (Fla. 1990); Pentecost; Rollins v. State, 148 So.2d 274 (Fla. 1963); McRae v. State, 62 Fla. 74, 57 So. 348 (1912). The United States Supreme Court recently echoed Young's reasoning and conclusions in Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Penn relies on Moore v. State, 525 So.2d 870 (Fla. 1988), and Hill v. State, 477 So.2d 553 (Fla. 1985), but those cases are distinguishable from the instant case. Penn never objected to any of the jurors after exhausting his peremptories and has not alleged, let alone demonstrated, that an incompetent juror sat on his jury. We therefore find no merit to this point on appeal.
Penn claimed to have been intoxicated by crack cocaine during the night he killed his mother and moved for acquittal on the first-degree murder charge.[2] As a basis for the motion, Penn argued that because the jury found him not guilty of the underlying felony of robbery he could not have been convicted of first-degree felony murder and that because voluntary intoxication is a defense to first-degree premeditated murder the state had not proved premeditation. The court denied the motion, and Penn appeals that denial.
Premeditation can be shown by circumstantial evidence. Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury. Preston v. State, 444 So.2d 939 (Fla. 1984). This Court has previously stated:
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of his victim is concerned.
*1082 Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Accord Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984). The court instructed the jury on premeditation and on voluntary intoxication, and the jury obviously believed the state's evidence rather than the defense's theory of voluntary intoxication.[3] After examining this record, we find sufficient evidence of premeditation to support both the verdict and the jury's disagreement with Penn that he could not have formed the specific intent necessary for premeditated murder.
While in jail awaiting trial, Penn wrote a letter to a local newspaper reporter in which he confessed killing his mother, detailed his and his wife's drug use, expressed remorse, and stated that he wanted to be sentenced to death. The reporter telephoned Penn at the jail to verify the letter. The state called the reporter as a witness, read the letter into evidence, and questioned the reporter about his conversation with Penn. The following occurred:
Q: [Elmore, prosecutor]: Mr. Knutz, did he in any way disclaim responsibility for the murder of his mother?
A: No. No, I would say not.
Q: Did he in any way indicate that anyone else had participated in the murder of his mother?
A: He didn't indicate that anyone had participated in the crime, no.
Q: Did he indicate he had any suspicion that anyone had participated in the crime or had been in the house when his mother was killed?
A: No.
MR. ELMORE: Thank you. Nothing further.
JUDGE FLEET: Defense may cross.
CROSS EXAMINATION
BY MR. LOVELESS [defense counsel]:
Q: Mr. Knutz, did the rest of your conversation concern the reason why? Is that what he wanted to talk about?
A: He wanted to talk 
MR. ELMORE: I object to any further examination concerning the other things that James Randall Penn said at that time. They are self-serving declarations.
JUDGE FLEET: Objection overruled. Both counsel approach the bench.
At the bench conference the prosecutor argued that he asked the reporter only "very pointed and specific questions as to specific areas." Defense counsel proffered the testimony he wished to elicit from the witness, specifically:
At one point he said he didn't think about what he was doing, that he could have just robbed her, that he didn't have to kill her. He mentioned something about not really having realized what he had done until he was on his way to Panama City, I believe it says.
After further argument, the court sustained the objection "without prejudice of the rights of the defendant to introduce it in his own case in chief if he desires to do so."
Penn now claims that restricting the cross-examination of this witness denied his right to confront the witnesses against him. We disagree.
As previously held by this Court,
questions on cross-examination must either relate to credibility or be germane to the matters brought out on direct examination. If the defendant seeks to elicit testimony from an adverse witness which goes beyond the scope encompassed by the testimony of the witness on direct examination, other than matters going to credibility, he must make the witness his own. Stated more succinctly, this rule posits that the defendant may not use cross-examination as a vehicle for presenting defensive evidence.
Steinhorst v. State, 412 So.2d 332, 337 (Fla. 1982) (citations omitted). Accord Jones v. State, 440 So.2d 570 (Fla. 1983). *1083 Moreover, self-serving acts or declarations of a defendant cannot be brought out on cross-examination because a defendant is not permitted "to make evidence for himself." Jenkins v. State, 58 Fla. 62, 65, 50 So. 582, 583 (1909); Turner v. State, 99 Fla. 246, 126 So. 158 (1930).
The statements Penn's counsel tried to introduce went beyond the scope of direct examination and would have tended to bolster Penn's theory of defense that he was too intoxicated by drugs to know what he was doing. This theory was clearly a defensive matter, and Penn could and should have developed it by calling his own witnesses. Steinhorst. Therefore, we find no abuse of the trial court's discretion regarding this issue.
Our review of the record shows competent substantial evidence sufficient to support Penn's conviction, and we hereby affirm his conviction of first-degree murder.[4]
The trial court found the murder to have been heinous, atrocious, or cruel and to have been committed in a cold, calculated, and premeditated manner with no pretense of moral or legal justification.[5] In mitigation the court found that Penn had no significant history of prior criminal activity[6] and that he acted under the influence of extreme mental or emotional disturbance. Penn does not challenge the first aggravating factor, and we agree with the trial court that the state established it beyond a reasonable doubt.[7] Although we find the evidence sufficient to support a conviction of premeditated murder, we do not find that it rises to the level needed to support finding the murder to have been committed in a cold, calculated, and premeditated manner. Hardwick v. State, 461 So.2d 79 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985); Preston v. State, 444 So.2d 939 (Fla. 1984). While Penn obviously decided, for some unknown reason, that he should kill his mother, there is no evidence of the cold calculation prior to the murder necessary to establish this aggravating factor, and we hold that the trial court should not have considered it.
Generally, when a trial court weighs improper aggravating factors against established mitigating factors, we remand for reweighing because we cannot know if the result would have been different absent the impermissible factors. Oats v. State, 446 So.2d 90 (Fla. 1984), receded from on other grounds, Preston v. State, 564 So.2d 120 (Fla. 1990). However, one of our functions "in reviewing a death sentence is to consider the circumstances in light of our other decisions and determine whether the death penalty is appropriate." Menendez v. State, 419 So.2d 312, 315 (Fla. 1982). On the circumstances of this case, including Penn's heavy drug use and his wife's telling him that his mother stood in the way of their reconciliation, this is not one of the least mitigated and most aggravated murders. See State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Compare Smalley v. State, 546 So.2d 720 (Fla. 1989) (heinous, atrocious, cruel in aggravation; no prior history, extreme disturbance, extreme impairment in mitigation); Songer v. State, 544 So.2d 1010 (Fla. 1989) (under sentence of imprisonment in aggravation; extreme disturbance, substantial impairment, age in mitigation); Proffitt v. *1084 State, 510 So.2d 896 (Fla. 1987) (felony murder in aggravation; no prior history in mitigation); Blair v. State, 406 So.2d 1103 (Fla. 1981) (heinous, atrocious, cruel in aggravation; no prior history in mitigation). After conducting a proportionality review, we do not find the death sentence warranted in this case.[8] Therefore, we vacate Penn's sentence and remand with directions that he be sentenced to life imprisonment with no possibility of parole for twenty-five years.
It is so ordered.
OVERTON, McDONALD, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which SHAW, C.J. and EHRLICH, Senior Justice, concur.
GRIMES, Justice, concurring in part, dissenting in part.
I cannot agree that Penn's death sentence should be vacated.
First, I believe that the evidence was sufficient to support the trial judge's finding that the murder was committed in a cold, calculated, and premeditated manner with no pretense of moral or legal justification. On the night of the murder, Penn asked his estranged wife if they could get back together. She told him that his mother was in the way. She suggested that he "get her out of the way" and that he "get some money and stuff." Thereafter, Penn went to his mother's house several times and stole a microwave, a fur coat, a gun, several rings, and a diamond bracelet, as well as his mother's credit cards. The telephone lines were ripped out.
During one of Penn's trips to his mother's house that night, he unlocked the laundry-room door, obtained a claw hammer, and proceeded to bludgeon his mother to death as she slept. He struck her in the head thirty-one times. Several defensive wounds to the body led the pathologist to believe that she did not lose consciousness immediately and may have taken as long as forty-five minutes to die. Penn then hid the hammer under the carpet in another room and went to the bathroom to clean off his mother's blood. He filled a bag with some more of his mother's belongings and left the house by carefully jumping over the yard sprinklers in order to keep from getting wet. His mother's body was discovered the next morning. Penn was apprehended later that day after an automobile chase in which he wrecked his car.
That a murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification can be proven by such facts as advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course. Swafford v. State, 533 So.2d 270 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989). In Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984), a finding of this aggravating circumstance was sustained upon evidence that the defendant broke into a woman's house, armed himself in her kitchen, and attacked her as she lay sleeping in her bed.
The Penn murder was not a spur-of-the-moment killing carried out upon impulse. There was sufficient evidence of a prearranged plan or heightened premeditation to support the trial judge's conclusion that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The fact that Penn may have been mentally disturbed would not affect the application of this aggravating circumstance. Michael v. State, 437 So.2d 138 (Fla. 1983), cert. denied, 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984).
In any event, even if this aggravating circumstance is eliminated, the death sentence for this horrible crime is not disproportional. The facts of the cases cited by the majority opinion in its conclusion on *1085 proportionality were substantially different from those of the instant case. It is well settled that it is not the number of aggravating and mitigating circumstances that is critical but rather the weight to be given each of them. Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984), receded from on other grounds, Rogers v. State, 511 So.2d 526 (Fla. 1987). While there was evidence that Penn had a history of chemical dependency, the only evidence of drugs taken on the night of the murder came from his own confessions. Several witnesses who came in contact with him on the morning following the murder said that he did not appear affected in any way. His examining psychologist said that Penn functioned within the range of average intelligence and that he had no evidence of organic brain damage, paranoid schizophrenia, or "any major mental disorder." He could not express an opinion with respect to whether Penn had suffered from cocaine psychosis.
The jury unanimously recommended the sentence of death. This recommendation was entitled to great weight. Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980). See Middleton v. State, 426 So.2d 548, 553 (Fla. 1982) ("[T]he jury's recommendation of a sentence of death is a strong indication that it did not find appellant's emotional state particularly compelling as a mitigating circumstance."), cert. denied, 463 U.S. 1230, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983). The trial judge was in the best position to evaluate the propriety of the recommendation because he heard the evidence. In vacating Penn's death sentence on grounds of proportionality, this Court has unwittingly reweighed the evidence. I would affirm both the judgment of guilt and the sentence of death.
SHAW, C.J., and EHRLICH, Senior Justice, concur.
NOTES
[1] In requesting more challenges, defense counsel stated:

Based upon the amount of publicity that's involved, Your Honor, I would request the Court give me additional challenges  peremptory challenges. As the Court is aware, I have used all I had and if, in addition, you said that the last one, two, three witnesses [sic] have been challenged for cause because of their knowledge of this particular case. I think, Your Honor, that every person we have talked to the last two days has known about the case and, in all fairness, I think I should be granted additional challenges.
[2] The verdict form returned by the jury showed a conviction of first-degree murder, but did not specify either premeditated or felony murder.
[3] Among other things the evidence showed that Penn removed the murder weapon, a hammer, from a locked laundry room and hid the hammer and washed the blood off himself after the murder.
[4] We also affirm his grand theft conviction and sentence.
[5] The state argues that the record also establishes that Penn committed the murder for pecuniary gain. Although the judge mentioned Penn's stealing numerous items from his mother's home, he did not find this aggravator to have been proved beyond a reasonable doubt and did not consider it.
[6] The state argues that the court erred in finding this mitigator due to Penn's prior convictions of traffic violations, passing worthless checks, and grand theft. Deciding whether a mitigating circumstance has been established, however, is within a trial court's discretion. King v. Dugger, 555 So.2d 355 (Fla. 1990); Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). We find no abuse of discretion here.
[7] Penn's mother sustained 31 separate wounds, mostly to her head. The medical examiner testified that she had defensive wounds on her hands and that it could have taken up to 45 minutes for her to die.
[8] Because of this holding, we do not address Penn's final point regarding cross-examination of a defense witness during the penalty proceeding.