Brett A. Bogle appeals his convictions of burglary with assault or battery, retaliation against a witness, and first-degree murder and his respective sentences, including a death sentence for the first-degree murder *Page 1105 
conviction. We have jurisdiction pursuant to article V, section 3(b)(1), of the Florida Constitution. For the reasons expressed, we affirm Bogle's convictions and sentences.
The record reflects the following facts regarding this case. Margaret Torres (the victim) was the sister of Katie Alfonso and stayed at Alfonso's house four or five nights a week. In June 1991, Bogle met Alfonso and shortly thereafter he moved in with Alfonso and the victim. Bogle and the victim did not get along and Alfonso eventually asked Bogle to move out. The following week, Bogle, Alfonso, the victim, and another person went out together and things seemed to be going better. During the outing, however, Bogle and the victim began to argue again. Subsequently, Alfonso and the victim refused to allow Bogle into Alfonso's house. Bogle then broke through the screen door of Alfonso's house, grabbed Alfonso's neck to push her out of the way, grabbed the victim's arm to remove the telephone from her hand as she tried to call 911, pulled the telephones out of the kitchen and bedroom, and took clothing from the house. As he left the house, Bogle told the victim that she would not live to tell about it if she called the police and pressed charges. In response to the victim's uncompleted call to 911, a deputy sheriff arrived shortly after Bogle left. The deputy referred the matter to the state attorney's office. Several days later, Bogle called Alfonso and again threatened the victim, stating that, if the victim pressed charges, she would not live to tell about it.
About two weeks later, Bogle called Alfonso to ask if he could come over to her house. The victim was out for the evening. When Alfonso told Bogle that he could not come over, he became furious and hung up. Later that night, Bogle and the victim ran into each other at a bar called Club 41. Witnesses saw them talking briefly. Witnesses also noticed that Bogle was clean and had no noticeable injuries of any kind when he arrived at Club 41. The victim left Club 41 at about 1 a.m.; Bogle left approximately five minutes later. About forty-five minutes after that, Bogle approached a car outside Club 41 and asked for a ride. At that time, his forehead was scratched, his clothes were dirty, and his crotch was wet.
The next day, the victim's nude and badly beaten body was found outside an establishment located next to Club 41. Her head had been crushed with a piece of cement, and she had died of blows to the head. Additionally, she had semen in her vagina and trauma to her anus consistent with sexual activity that was likely inflicted before death. The DNA extracted from the semen was consistent with Bogle's DNA (12.5% of Caucasian males could have contributed the semen), and a pubic hair found on the crotch area of Bogle's pants matched the victim's.
Bogle put on no evidence in his defense. The jury found him guilty of burglary of Alfonso's home with force, retaliation against the victim as a witness to that burglary, and first-degree murder of the victim. A penalty phase proceeding was held on the first-degree murder conviction, and the jury recommended death by a seven-to-five vote. The trial judge, however, granted a new penalty phase proceeding after determining that improper rebuttal evidence had been presented by the State.
At the second penalty phase proceeding, the State presented the same evidence it relied on in the guilt phase. Bogle put on eight witnesses who testified that Bogle had been subjected to physical and mental abuse as a child, had used drugs at his father's urging from the time he was five or six years old, was under the influence of alcohol at the time of the murder, had a personality disorder and suffered from some mental disturbance at the time of the murder, was kind to others, and had been injured in an automobile accident a week before the murder. The jury recommended death by a ten-to-two vote. The trial judge subsequently sentenced Bogle to death, finding four aggravating circumstances: (1) previous conviction of a violent felony (burglary with force on Alfonso and the victim two weeks before the murder); (2) the murder was committed while engaged in the commission of a sexual battery; (3) the murder was committed for the purpose of avoiding arrest; and (4) the murder was heinous, atrocious, or cruel (HAC). In mitigation, the trial judge gave *Page 1106 
some weight to the statutory factor of impaired capacity but stated that substantial impairment had not been proven; gave substantial weight to Bogle's family background; little weight to his alcohol and drug abuse; gave some weight to his good conduct during trial; gave some, but not a great deal, of weight to his kindness to others; and gave no weight to his involvement in an automobile accident. Bogle also received consecutive sentences of life in prison for the burglary-with-assault-or-battery conviction and five years in prison for the retaliation-against-a-witness conviction.
Bogle raises no issues regarding the guilt phase of his trial, and he raises six issues regarding the second penalty phase proceeding. Although Bogle raises no issues regarding his convictions, having reviewed the entire record in this proceeding, we find that the evidence was clearly sufficient to justify Bogle's convictions of burglary with assault or battery, retaliation against a witness, and first-degree murder, and we find no error that would merit reversal.
We now turn to the six issues raised by Bogle regarding the second penalty phase proceeding. In the first issue, Bogle claims that the office of the state attorney for the Thirteenth Circuit should have been prevented from prosecuting Bogle after one of Bogle's attorneys went to work for that office. The record reflects that Bogle was represented by two assistant public defenders, Douglas Roberts and Paul Firmani, during his trial. After the trial judge granted a new penalty phase proceeding, Roberts was hired by the state attorney's office for the Thirteenth Judicial Circuit. The public defender's office then filed a "Notice of Potential Conflict and Request for Hearing on Recusal" in Bogle's case given that Roberts would be working with the state attorney's office during Bogle's new penalty phase proceeding.
The trial judge held a hearing on this issue, at which Roberts and Nick Cox, the assistant state attorney handling Bogle's case, testified. They both acknowledged that, as they passed in the hall one day, they had a brief conversation about the case. Roberts stated that he asked Cox if the case was over yet. Cox stated that they briefly discussed the guilt phase of the trial and that Roberts told him that he and Firmani had a good relationship with Bogle, but that nothing was revealed by the conversation that was not already known to the State. The judge was distressed by the conversation but refused to disqualify the state attorney's office, finding no prejudice to Bogle.
Bogle argues that, under these circumstances, the trial judge erred in allowing the state attorney's office of the Thirteenth Judicial Circuit to prosecute him at the second penalty phase proceeding. According to Bogle, even if no prejudicial information was provided to Cox by Roberts, the appearance of impropriety raised by the conversation between the two is sufficient to warrant disqualification. We disagree. Disqualification of an entire state attorney's office is unnecessary when a disqualified attorney such as Roberts does not provide prejudicial information and does not personally assist in the prosecution of the charge. State v. Fitzpatrick, 464 So.2d 1185
(Fla. 1985). Moreover, although we have stated that the appearance of impropriety created by certain situations may demand disqualification, we have evaluated such situations on a case-by-case basis. For instance, in Reaves v. State, 574 So.2d 105
(Fla. 1991), we determined that the appearance of impropriety mandates the disqualification of a prosecutor who seeks to prosecute a defendant whom he or she previously defended. Likewise, in Castro v. State, 597 So.2d 259 (Fla. 1992), we held that personal assistance to the prosecution by a defendant's prior counsel creates a sufficient appearance of impropriety to warrant disqualification. In Reaves and Castro, the result turned on the exchange of prejudicial information or the personal assistance of the disqualified attorney to the prosecution, both of which are specifically prohibited by Fitzpatrick.
In this case, the trial judge found, after holding a formal hearing, that no prejudicial information had been exchanged between Roberts and Cox and that Roberts had not assisted the prosecution in this case in any capacity. While we agree with the trial judge's conclusion that the conversation between *Page 1107 
Roberts and Cox should have never taken place, we also agree that any appearance of impropriety raised by the conversation was not so great that disqualification was mandated. Consequently, we reject this claim.
In his second claim, Bogle contends that the trial judge erroneously prevented his penalty phase jury from considering critical evidence. According to Bogle, one of the important pieces of evidence used by the State against Bogle at the second penalty phase proceeding to support the aggravating circumstances was that Bogle's face was not scratched before he and the victim left Club 41, but that it was scratched shortly thereafter. Bogle sought to counteract this evidence through the testimony of a witness who would have testified that Bogle's face was scratched in a similar fashion right after his automobile accident, which occurred the week before the murder in this case. The trial judge disallowed this testimony. Bogle asserts that this testimony would have been mitigating as to state of mind before the offense, HAC, and committed during a sexual battery, and would have impeached the testimony of a number of other witnesses as to when the scratches occurred. Because the sentencer should not be precluded from considering any relevant evidence offered by the defense regarding the imposition of a sentence less than death, Bogle claims that the witness should have been allowed to testify regarding the scratches.
The record reflects that the witness was, in fact, allowed to testify that Bogle had injuries to his face from the accident. Specifically, she testified that she saw hospital personnel "taking glass particles out of his face and eyes and stitches." At this point, Bogle attempted to have the witness testify through the pictures taken of Bogle right after the murder that the injuries on Bogle in the pictures were the same injuries Bogle sustained in the accident. The State objected to that testimony on the grounds that the testimony went to lingering doubt as to whether Bogle committed the crime. The trial judge sustained the objection.
"The admissibility of evidence is within the trial court's discretion, and a reviewing court will not disturb a trial court's ruling unless an abuse of discretion is shown." King v.State, 514 So.2d 354, 357 (Fla. 1987), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). Moreover, residual or lingering doubt is not an appropriate nonstatutory mitigating circumstance. Id. at 358; Aldridge v. State, 503 So.2d 1257
(Fla. 1987). Although Bogle argued that the evidence was being used to rebut several aggravating circumstances, we cannot say, under the facts of this case, that the trial judge abused her discretion in excluding the testimony. Moreover, even if we were to find that the trial judge erred in excluding the testimony, we would find the error to be harmless beyond a reasonable doubt.State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). First, the witness was allowed to testify that Bogle's face was scratched after the automobile accident. Second, four other witnesses testified that the scratches on Bogle's face were not present before he followed the victim from Club 41 or that the scratches on his face after the murder were fresh. Thus, sufficient evidence was before the jury to allow a factual determination as to whether the scratches were inflicted by the victim, and we find that no reasonable possibility exists that this testimony could have affected the outcome of the jury's recommendation.
Next, Bogle claims that the trial judge erroneously refused to give a specially requested jury instruction to the penalty phase jury. To allow the jury to properly evaluate mitigating evidence, Bogle asked the trial judge to modify several standard penalty phase jury instructions regarding mitigating circumstances. Specifically, Bogle asked the trial judge to eliminate the word "substantially" from the jury instruction on substantial impairment and the word "extreme" from the jury instruction on extreme mental or emotional disturbance. Because Bogle's mental expert testified that Bogle was under "some" type of emotional mental disturbance and that his ability to conform his conduct was impaired "to some extent," Bogle contends that the words "substantially" and "extreme" in these two mitigating circumstances improperly limited the jury's consideration of mental *Page 1108 
mitigating evidence. Bogle also asked the court to strike the language "[i]f you are reasonably convinced that a mitigating circumstance exists, you may consider it established," asserting that this instruction erroneously restricted the evidence that the jury considered in mitigation. We recently rejected a similar argument in Walls v. State, 641 So.2d 381 (Fla. 1994), and, for the reasons expressed in Walls, we find this issue to be without merit.
Bogle's fourth issue concerns the aggravating circumstances. Bogle alleges that the aggravating circumstances of prior violent felony, committed while engaged in the commission of a sexual battery, committed to avoid arrest, and HAC are not supported by the facts in this case. We address each of these circumstances in turn.
Bogle first claims that the aggravating circumstance of prior violent felony is inapplicable because the prior violent felony at issue is an additional felony perpetrated against the victim. The prior violent felony in this case is Bogle's conviction of burglary of a dwelling with an assault or battery. That felony was committed twelve days before the murder in this case and was perpetrated against both the victim and the victim's sister, Katie Alfonso. In Wasko v. State, 505 So.2d 1314 (Fla. 1987), we did state that, when the felony at issue is a contemporaneous felony perpetrated against the victim, the aggravating circumstance of prior violent felony does not apply. The rationale set forth in Wasko, however, does not apply in a situation where, as here, the felony was not contemporaneous and also involved another victim. As such, the trial judge properly found this aggravating circumstance to apply in this case.
Bogle next argues that the aggravating factor of committed while engaged in the commission of a sexual battery is inapplicable. In support of this argument, Bogle notes that he was neither charged with nor convicted of sexual battery or attempt to commit sexual battery and he contends that no evidence was produced to show that the sexual activity was nonconsensual. In fact, according to Bogle, the evidence supports the opposite conclusion. Because the facts are susceptible to more than one conclusion, he argues that this factor should not be upheld. We disagree. In finding this aggravating circumstance, the trial judge stated:
 Although the defendant was not charged with or convicted of sexual battery by the jury, the evidence at trial and penalty phase was that the victim, Margaret Torres, was found nude. She had semen in her vagina and trauma to her anus consistent with sexual activity. Dr. Vernard Adams, the medical examiner, testified the injuries to the anus were consistent with intercourse and the most reasonable possibility was that they were inflicted before death. The DNA extracted from the semen found in the victim was consistent, although proof was not positive, with the defendant's DNA (12.5% of caucasian males could have contributed the semen). Further, a pubic hair found on the defendant's pants, in the crotch area, was consistent with the pubic hair of the victim. Defendant was at the scene, exiting the bar immediately after the victim and later that evening was seen by a witness in the immediate area of the murder, his pants covered with dirt and mud, the crotch of his pants wet, and scratches on his forehead. This aggravating circumstance was proven beyond a reasonable doubt.
Additionally, the medical examiner testified that the sexual activity occurred within three hours of the victim's death, and witnesses testified that the victim was at a club named Starky's and then Club 41 alone during the hours preceding her death. It is not necessary that there be a conviction of sexual battery to find this factor in aggravation. Given the facts, we find this aggravating circumstance to have been proven beyond a reasonable doubt.
Bogle also claims that the aggravating factor of committed to avoid arrest is not supported by the evidence in this case. As Bogle correctly noted, to establish this aggravating circumstance when the victim is not a law enforcement officer, the requisite intent must be proven beyond a reasonable doubt. Bates v.State, 465 So.2d 490 (Fla. 1985). In this case, we find that the requisite intent was established. Bogle was convicted *Page 1109 
of retaliation against a witness after breaking into Katie Alfonso's home and after warning the victim, on several occasions, that she would "not live to tell about it" if she pursued criminal charges against Bogle regarding that incident.
In his last claim regarding the aggravating circumstances, Bogle asserts that the murder in this case was not HAC. According to Bogle, nothing in this case established that Bogle intended to cause the victim unnecessary suffering. Additionally, he asserts that the evidence establishes that the victim was highly intoxicated and that the first blow to the victim's head could have killed her. As noted by the trial judge, Bogle
 struck [the victim] a total of seven times with such force that her head was so far impressed into a hollow in the ground that the initial impression of the officers at the scene was that the head had been flattened to a considerable degree. The medical examiner testified that the victim was alive at the time of the infliction of most of the wounds but could not testify as to how long she survived, "four breaths, several seconds, or a few minutes." In his opinion, the last blows were those inflicted to the side of her head — the blows which caused her death. The murder was extremely wicked and vile and inflicted a high degree of pain and suffering on the victim, Margaret Torres. The defendant acted with complete indifference to the victim's suffering.
We have found other similar murders to be HAC and likewise find this factor to be supported here. Penn v. State, 574 So.2d 1079
(Fla. 1991) (beating victim to death with hammer was HAC);Chandler v. State, 534 So.2d 701 (Fla. 1988) (repeatedly beating victims with baseball bat was HAC), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989); Lamb v.State, 532 So.2d 1051 (Fla. 1988) (beating victim to death by striking victim on head with hammer six times was HAC).
In his fifth claim, Bogle contends that the jury instruction given in this case on HAC is unconstitutionally vague, overbroad, and arbitrary and capricious. We find that the jury instruction given in this was the instruction we specifically approved inHall v. State, 614 So.2d 473 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993). As such, we find this claim to be without merit.
Finally, Bogle asserts that a sentence of death in this case is disproportionate because the evidence supporting the aggravating circumstances in this case is weak, while the evidence supporting the mitigating circumstances is strong. Additionally, Bogle claims that the trial judge erroneously failed to consider Bogle's mental state at the time of the murder as anonstatutory mitigating circumstance, failed to consider Bogle's artistic talent and capacity for gainful employment in mitigation, and failed to recognize that this murder was the result of Bogle's rage against the victim and not because of Bogle's desire to eliminate a witness. In sum, Bogle contends that this murder is disproportionate because a number of the aggravating circumstances are not applicable and because the trial judge failed to give appropriate weight to the factors in mitigation. We find that the trial judge properly evaluated the factors in aggravation and mitigation in detail in her sentencing order. Moreover, as explained above, each of the factors in aggravation are supported by the record. The fact that the trial judge did not specifically list Bogle's artistic talent and capacity for employment in mitigation is insufficient to overrule the trial judge's imposition of the death penalty given the minor weight that would be afforded to those factors. When we compare the circumstances of this case to other cases in which the death penalty has been imposed, we find that the sentence of death is not disproportionate. See, e.g., Owen v. State, 596 So.2d 985
(Fla.) (where victim was raped and beaten, death penalty was appropriate in light of three aggravating circumstances and little mitigation), cert. denied, ___ U.S. ___, 113 S.Ct. 338, 121 L.Ed.2d 255 (1992); Bowden v. State, 588 So.2d 225 (Fla. 1991) (where victim was beaten to death with a rebar, death was appropriate in light of the two aggravating circumstances of previous conviction of violent felony and HAC and mitigation of "terrible childhood and adolescence"), cert. denied, *Page 1110 503 U.S. 975, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992); Occhiconev. State, 570 So.2d 902 (Fla. 1990) (where victims were murdered due to interference with defendant's relationship with daughter, death penalty was warranted in light of three aggravating circumstances), cert. denied, 500 U.S. 938, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991).
Accordingly, because we find no merit to any of the issues raised by Bogle, we affirm Bogle's convictions of burglary with assault or battery, retaliation against a witness, and first-degree murder, and his respective sentences, including his sentence of death for the first-degree murder conviction.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
KOGAN, J., concurs as to convictions and concurs in result only as to sentence.