696 So.2d 738 (1997)
Michael Thomas COOLEN, Appellant,
v.
STATE of Florida, Appellee.
No. 84018.
Supreme Court of Florida.
May 22, 1997.
Rehearing Denied July 8, 1997.
*739 James Marion Moorman, Public Defender and Douglas S. Connor, Assistant Public Defender, *740 Tenth Judicial Circuit, Bartow, for Appellant.
Robert A. Butterworth, Attorney General and Candance M. Sabella, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Michael Thomas Coolen. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We reverse the first-degree murder conviction and vacate the death sentence because the evidence was insufficient to prove premeditation.
Coolen was charged with first-degree murder for the stabbing death of John Kellar on November 7, 1992. The evidence introduced at trial revealed the following facts. Kellar and his wife, Barbara Caughman Kellar, went to a pub in Clearwater at approximately 4:30 p.m. and struck up a conversation with Coolen and his girlfriend Deborah Morabito. The two couples drank beer and talked for three or four hours and then went back to the Kellars' home where they continued to party and drink beer in the backyard. According to nine-year-old Jamie Caughman, Barbara's son, the two men fought over a can of beer during the evening.
Coolen and Jamie walked down a nearby dirt road to shoot off fireworks that Coolen had in his van. Coolen then played tag with Jamie in the yard. During the game of tag, Coolen pulled Jamie away from the van door, put him on the ground, took a knife out of his pocket, and warned Jamie not to step on the door again. Jamie told no one about the incident and went into the house to play Nintendo.
John Kellar escorted Morabito into the house so that she could use the bathroom. During their absence, Coolen put his hand down Barbara Kellar's shirt. She pushed Coolen away and did not know where he went. When John Kellar and Morabito returned from the house a few minutes later, they joined Barbara Kellar at the van and the three continued their conversation. Suddenly Coolen pulled John Kellar away and backed him up to the house. John Kellar began to holler and moan as Coolen stabbed him. Barbara Kellar ran to assist her husband when he fell to the ground. She threw her body over his as protection and Coolen struck her several times with a knife. Jamie came outside in time to see John Kellar and Coolen fighting. He saw Coolen stabbing his stepfather and his stepfather trying to push Coolen away. While Coolen was driving away from the scene, he hit a tree and the Kellars' truck.
In response to Barbara Kellar's 911 call, deputies and emergency medical personnel were dispatched to the scene. John Kellar was transported by helicopter to the hospital and died from his stab wounds. The medical examiner testified that Kellar had six stab wounds, including two defensive wounds to his forearm and hand, a deep stab wound to the right chest, and one to his right back. Kellar's blood alcohol level was .22.
Based upon the description given by Barbara Kellar and Jamie Caughman, deputies stopped Coolen's van on an adjacent street shortly after the stabbing. Coolen and Morabito were transported to the Kellar residence where they were identified by Barbara Kellar. Coolen was read his rights, expressed his understanding of those rights, and responded to questioning. According to the deputy, Coolen appeared to be intoxicated but had no trouble understanding the deputy or responding to questions. Coolen admitted that a knife found in Morabito's coat pocket was his and that he had used the knife to stab John Kellar.
Coolen was also interviewed at the sheriff's office several hours after the stabbing. In that taped interview, which was played to the jury, Coolen admitted stabbing Kellar with the knife found in Morabito's coat. He stated that he had been "playing word games" with Barbara Kellar when John Kellar "copped an attitude." He saw "something silver" in Kellar's hand, thought it was a small handgun that Kellar said he owned, and attacked Kellar to protect himself.
At the close of the State's evidence, defense counsel moved for a judgment of acquittal on the basis that the State had failed to adduce any evidence of premeditation. *741 Defense counsel renewed the motion on the same grounds at the close of all evidence. The court denied the motion both times. The jury returned a verdict of guilty of murder in the first degree as charged.
During the penalty phase, the State presented evidence of Coolen's prior violent felony convictions. Coolen presented the testimony of his aunt, cousin, and sister regarding his family background, testimony of his girlfriend Morabito regarding his drinking problem, and the testimony of two friends with whom he had previously worked.
The jury recommended the death sentence by a vote of eight to four. The judge followed that recommendation and imposed the death sentence. The judge found one aggravating circumstance (prior violent felony), no statutory mitigating circumstances, and three nonstatutory mitigating circumstances (employment background, participation in self-help programs while in jail, and being a caring relative). The judge gave no weight to the first two mitigating factors and only slight weight to the caring relative mitigating factor.
Coolen raises ten issues on appeal; four involve the guilt phase of his trial and six relate to the penalty phase.[1] We find the first issue to be dispositive as to Coolen's appeal of the first-degree murder conviction and death sentence. For the reasons discussed below, we find the evidence to be insufficient to support Coolen's conviction for first-degree murder.
Premeditation is the essential element which distinguishes first-degree murder from second-degree murder. Wilson v. State, 493 So.2d 1019 (Fla.1986). Premeditation is defined as
more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.
Id. at 1021. While premeditation may be proven by circumstantial evidence, the evidence relied upon by the State must be inconsistent with every other reasonable inference. Hoefert v. State, 617 So.2d 1046 (Fla. 1993). Where the State's proof fails to exclude a reasonable hypothesis that the homicide occurred other than by premeditated design, a verdict of first-degree murder cannot be sustained. Hall v. State, 403 So.2d 1319 (Fla.1981).
The State asserts that the following evidence establishes premeditation in the instant case. Barbara Kellar testified that Coolen suddenly attacked Kellar without warning or provocation. Jamie Caughman testified that Coolen had threatened him with the knife earlier in the evening, that he had seen Kellar and Coolen fight over a beer, and that Kellar tried to fend off Coolen during the attack. The State also contends that the deep stab wounds to Kellar's chest and back and the defensive wounds on his forearm and hand are indicative of the premeditated nature of the attack and inconsistent with Coolen's claim of self-defense.
Although this evidence is consistent with an unlawful killing, we do not find sufficient evidence to prove premeditation. Barbara Kellar testified that the two men had not been arguing and that Coolen simply "came out of nowhere" and starting stabbing her husband. Jamie Caughman described an ongoing pattern of hostility between two intoxicated men that culminated in a fight over a *742 beer can. The testimony of these eyewitnesses is contradictory and neither provides sufficient evidence of premeditation. While the nature and manner of the wounds inflicted may be circumstantial evidence of premeditation, Holton v. State, 573 So.2d 284, 289 (Fla.1990), the stab wounds inflicted here are also consistent with an escalating fight over a beer (Jamie Caughman's account) or a "preemptive" attack in the paranoid belief that the victim was going to attack first (Coolen's version). Because the evidence was insufficient to prove premeditation, we reverse the conviction for first-degree murder and vacate the death sentence.
Having reversed the first-degree murder conviction, we need not reach any of the claims relating to the penalty phase. We reject Coolen's other guilt-phase claims as being without merit. Claims 2 and 3 relate to the court's denial of two defense motions: to excise portions of Coolen's taped statement that referred to his prior criminal convictions and prison sentences; and to bar testimony about Coolen's knife threat to Jamie Caughman.
During a taped interview at the sheriff's office, Coolen made several references to his previous criminal convictions and prison sentences. Defense counsel filed a motion to redact Coolen's taped statement so that the jury would not hear about his criminal record. While the court recognized that evidence of a prior criminal record is inadmissible to show bad character or propensity to commit crimes, the court determined that the statements were relevant here to show Coolen's state of mind during the attack. Thus, the court denied the motion to excise the tape and admitted the confession in its entirety.
We agree with the trial court that these statements were properly admitted to explain Coolen's state of mind at the time of the offense. Coolen stated that Kellar had "something silver in his hand." Coolen reacted quickly by stabbing Kellar because his previous "eight years in maximum prisons up in Massachusetts" had taught him not to take chances, to "react very quickly," and that it's better to "be safe than sorry." Thus, these statements were relevant to explain Coolen's actions and state of mind at the time of the stabbing.[2]
In his third claim, Coolen contends that the knife threat to Jamie Caughman constituted "collateral crimes" evidence that was being introduced to show his propensity to confront people with a knife. Thus, he argues, testimony relating to this incident was inadmissible under section 90.404, Florida Statutes (1993).[3] However, subsections 90.404(1) and 90.404(2) do not govern the admissibility of this evidence. As this Court explained in Griffin v. State,
evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because "it is a relevant and inseparable part of the act which is in *743 issue.... [I]t is necessary to admit the evidence to adequately describe the deed."
639 So.2d 966, 968 (Fla.1994) (quoting Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.)), cert. denied, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).
In the instant case, Jamie Caughman's testimony does not fall within the Williams rule and was not introduced by the State as similar fact evidence. Nor was this testimony's sole relevance to prove Coolen's bad character. Instead, the testimony was necessary to establish the entire context out of which the crime arose. Jamie Caughman's testimony was relevant and was not unduly prejudicial. Therefore, we find no error in the admission of this testimony.
In claim 4, Coolen argues that the court impermissibly limited his cross-examination of Barbara Kellar by not allowing questioning about the nature of criminal charges pending against her. Kellar was charged with sexual battery for engaging in sexual conduct with her fourteen-year-old stepson on the night of her husband's funeral. The charge was later reduced to solicitation of sexual activity and Kellar entered a pretrial intervention program (PTI). The court permitted defense counsel to bring out the fact that Kellar was charged with a felony subsequent to her husband's stabbing and that she was currently on PTI, but did not allow counsel to reach the nature of the felony or the facts involved. Coolen claims that this limitation on his cross-examination of Kellar violated his Confrontation Clause rights. We find no such violation here.
"When charges are pending against a prosecution witness at the time he [or she] testifies, the defense is entitled to bring this fact to the jury's attention to show bias, motive, or self-interest." Torres-Arboledo v. State, 524 So.2d 403, 408 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988). However, evidence of bias is subject to a section 90.403, Florida Statutes (1993),[4] balancing and may be inadmissible if its unfair prejudice to a witness or a party substantially outweighs its probative value. Charles W. Ehrhardt, Florida Evidence § 608.5 (1996 ed.). How far the inquiry can proceed into the details of the matter is within the court's discretion. See Dufour v. State, 495 So.2d 154, 159-60 (Fla.1986) (finding that court did not abuse its discretion by limiting inquiry into details of pending criminal charge after witness had been examined about fact of charge), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987).
In this case, we find no abuse of discretion in limiting inquiry into the details of the pending criminal charge against Barbara Kellar. Through cross-examination, the jury learned that Kellar had been criminally charged in another incident that occurred after her husband's death, that she was currently in a pretrial intervention program, and that the charges against her would be dismissed if she successfully completed that program. Thus, Kellar's bias was established and the court did not err by limiting cross-examination into the details of the charge against her.
As discussed above, we reverse Coolen's conviction for first-degree murder and vacate his death sentence. However, we find sufficient evidence in the record to sustain a conviction of second-degree murder.[5] Thus, in accordance with section 924.34, Florida Statutes (1995), this case is remanded to the trial court with instructions to enter a judgment for second-degree murder and to sentence Coolen accordingly.
It is so ordered.
OVERTON and HARDING, JJ., concur.
KOGAN, C.J. and ANSTEAD, J., concur in result only.
GRIMES, J., dissents with an opinion, in which SHAW and WELLS, JJ., concur.
*744 GRIMES, Justice, dissenting.
I cannot agree that the evidence was insufficient to convict Coolen of premeditated first-degree murder.
In Sireci v. State, 399 So.2d 964 (Fla.1981), this Court said:
Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues. Weaver v. State, 220 So.2d 53 (Fla. 2d DCA), cert. denied, 225 So.2d 913 (1969). Premeditation does not have to be contemplated for any particular period of time before the act, and may occur a moment before the act. Hernandez v. State, 273 So.2d 130 (Fla. 1st DCA) cert. denied, 277 So.2d 287 (1973). Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of his victim is concerned. Larry v. State, 104 So.2d 352 (Fla.1958).
Sireci, 399 So.2d at 967.
Thereafter, in Penn v. State, 574 So.2d 1079 (Fla.1991), we explained:
Premeditation can be shown by circumstantial evidence. Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury.
Id. at 1081. See Middleton v. State, 426 So.2d 548 (Fla.1982) (confession that shooting was a "snap decision" sufficient to sustain premeditation); Mackiewicz v. State, 114 So.2d 684 (Fla.1959) (fact that only an instant elapsed between defendant's discovery of police officer and fatal shot did not negate premeditation).
Without apparent provocation, Coolen rushed over to the victim and stabbed him six times. Two of the stab wounds were defensive and one was in the back. When the victim's wife threw her body over his in order to protect him, Coolen also stabbed her several times.
Cool and calculatedno; but clearly premeditated. How can it be said that the jury could not reasonably conclude that Coolen intended to kill his victim?
I respectfully dissent.
SHAW and WELLS, JJ., concur.
NOTES
[1] Coolen argues that the trial court erred in the following matters: 1) evidence was insufficient to support his conviction for first-degree premeditated murder; 2) failure to excise portions of the taped statement referring to his previous criminal record and prison sentences; 3) admitting Jamie Caughman's testimony about a threat that Coolen made toward him on the night of the murder; 4) limiting cross-examination of Barbara Caughman Kellar; 5) excluding hearsay testimony regarding failure of Coolen's mother to get him counseling as a child; 6) admitting evidence about his prior violent felonies; 7) denying requested penalty phase instruction on "lack of intent to kill the victim" as a mitigating factor; 8) rejecting the statutory mitigating circumstance of substantially impaired capacity or, in the alternative, rejecting intoxication as a nonstatutory mitigating factor; 9) failure to find family background as a nonstatutory mitigating circumstance and failure to give weight to two of the nonstatutory mitigators found; and 10) the death sentence is disproportionate.
[2] In a footnote in his brief, Coolen notes two other statements that he contends should have been deleted from the tape. However, Coolen's failure to fully brief and argue these points constitutes a waiver of these claims. See Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").
[3] Section 90.404(1), Florida Statutes (1993), provides that character evidence is generally inadmissible to prove that a person acted in conformity with his or her character on a particular occasion. Section 90.404(2), Florida Statutes (1993), provides that similar fact evidence of other crimes, wrongs, or acts is inadmissible when relevant solely to prove bad character or propensity. Similar fact evidence is admissible "when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Such similar fact evidence is commonly referred to as "Williams rule" evidence because the statutory language tracks the language in Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Where the State wishes to introduce Williams rule evidence in a criminal action, it must provide the defendant notice, at least ten days prior to trial, of the offenses or acts it intends to offer. § 90.404(2)(b)1., Fla. Stat. (1993). No such notice was given in the instant case.
[4] Section 90.403, Florida Statutes (1993), provides that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."
[5] Second-degree murder is defined as the "unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (1995).