# Supreme Court of Florida

_____

No. SC11-2403
_____

**BRETT A. BOGLE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC12-2465
_____

**BRETT A. BOGLE,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[February 9, 2017]

PER CURIAM.

Brett Bogle appeals an order of the trial court denying his amended motion

to vacate his conviction of first-degree murder and sentence of death filed under

Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of

habeas corpus.  We have jurisdiction.  See art. V, § 3(b)(1), (9), Fla. Const.  For the reasons we explain below, we affirm the denial of postconviction relief and deny the habeas petition.

**FACTS**

Brett Bogle was charged in Hillsborough County with the first-degree murder of Margaret Torres.  The following facts come from this Court's opinion in Bogle's direct appeal:

> Margaret Torres (the victim) was the sister of Katie Alfonso and stayed at Alfonso's house four or five nights a week.  In June 1991, Bogle met Alfonso and shortly thereafter he moved in with Alfonso and the victim.  Bogle and the victim did not get along and Alfonso eventually asked Bogle to move out.  The following week [on September 1, 1991], Bogle, Alfonso, the victim, and another person went out together and things seemed to be going better.  During the outing, however, Bogle and the victim began to argue again.  Subsequently, Alfonso and the victim refused to allow Bogle into Alfonso's house.  Bogle then broke through the screen door of Alfonso's house, grabbed Alfonso's neck to push her out of the way, grabbed the victim's arm to remove the telephone from her hand as she tried to call 911, pulled the telephones out of the kitchen and bedroom, and took clothing from the house.  As he left the house, Bogle told the victim that she would not live to tell about it if she called the police and pressed charges.  In response to the victim's uncompleted call to 911, a deputy sheriff arrived shortly after Bogle left.  The deputy referred the matter to the state attorney's office.  Several days later, Bogle called Alfonso and again threatened the victim, stating that, if the victim pressed charges, she would not live to tell about it.
> About two weeks later [on September 12, 1991], Bogle called Alfonso to ask if he could come over to her house.  The victim was out for the evening.  When Alfonso told Bogle that he could not come over, he became furious and hung up.  Later that night, Bogle and the victim ran into each other at a bar called Club 41.  Witnesses saw

them talking briefly. Witnesses also noticed that Bogle was clean and had no noticeable injuries of any kind when he arrived at Club 41. The victim left Club 41 at about 1 a.m.; Bogle left approximately five minutes later. About forty-five minutes after that, Bogle approached a car outside Club 41 and asked for a ride. At that time, his forehead was scratched, his clothes were dirty, and his crotch was wet.

The next day, the victim's nude and badly beaten body was found outside an establishment ["Beverage Barn"] located next to Club 41. Her head had been crushed with a piece of cement, and she had died of blows to the head. Additionally, she had semen in her vagina and trauma to her anus consistent with sexual activity that was likely inflicted before death. The DNA extracted from the semen was consistent with Bogle's DNA (12.5% of Caucasian males could have contributed the semen), and a pubic hair found on the crotch area of Bogle's pants matched the victim's.

Bogle put on no evidence in his defense. The jury found him guilty of burglary of Alfonso's home with force, retaliation against the victim as a witness to that burglary, and first-degree murder of the victim. A penalty phase proceeding was held on the first-degree murder conviction, and the jury recommended death by a seven-to-five vote. The trial judge, however, granted a new penalty phase proceeding after determining that improper rebuttal evidence had been presented by the State.

At the second penalty phase proceeding, the State presented the same evidence it relied on in the guilt phase. Bogle put on eight witnesses who testified that Bogle had been subjected to physical and mental abuse as a child, had used drugs at his father's urging from the time he was five or six years old, was under the influence of alcohol at the time of the murder, had a personality disorder and suffered from some mental disturbance at the time of the murder, was kind to others, and had been injured in an automobile accident a week before the murder. The jury recommended death by a ten-to-two vote. The trial judge subsequently sentenced Bogle to death, finding four aggravating circumstances: (1) previous conviction of a violent felony (burglary with force on Alfonso and the victim two weeks before the murder); (2) the murder was committed while engaged in the commission of a sexual battery; (3) the murder was committed for the purpose of avoiding arrest; and (4) the murder was heinous, atrocious, or cruel (HAC). In mitigation, the trial judge gave some weight to the statutory factor of impaired capacity but stated that substantial

impairment had not been proven; gave substantial weight to Bogle's family background; little weight to his alcohol and drug abuse; gave some weight to his good conduct during trial; gave some, but not a great deal, of weight to his kindness to others; and gave no weight to his involvement in an automobile accident. Bogle also received consecutive sentences of life in prison for the burglary-with-assault-or-battery conviction and five years in prison for the retaliation-against-a-witness conviction.

Bogle v. State, 655 So. 2d 1103, 1105-06 (Fla. 1995), cert. denied, 516 U.S. 978.

We affirmed Bogle's convictions and sentences on direct appeal. Id. at 1110.[1]

In July 2000, Bogle filed an amended motion to vacate his conviction and sentence and subsequently filed amendments and a supplement thereto. Following an evidentiary hearing,[2] the trial court, on October 25, 2011, denied Bogle's amended motions to vacate his conviction and sentence.[3]

---

1. Bogle raised the following six claims on direct appeal: (1) the office of the state attorney for the Thirteenth Judicial Circuit should have been prevented from prosecuting Bogle after one of Bogle's attorneys went to work for that office; (2) the trial court erroneously prevented the penalty phase jury from considering critical evidence regarding scratches to his face; (3) the trial judge erroneously refused to give a specially requested penalty phase jury instruction; (4) the aggravating factors were unsupported; (5) the HAC jury instruction was unconstitutionally vague, overbroad, and arbitrary and capricious; and (6) his sentence of death was disproportionate. Id. at 1106-09.

2. The evidentiary hearing was conducted on June 9-13, 2008, November 30-December 1, 2009, and August 23-24, 2010.

3. On September 23, 2013, we granted Bogle's motion to relinquish jurisdiction, in part, for the purpose of pursuing any claims pertinent to the alleged newly discovered evidence of an August 20, 2013, letter from the United States Department of Justice (DOJ). According to this letter, the DOJ reviewed the work of Agent Malone, who conducted the microscopic hair analysis and testified at

**ANALYSIS**

**APPEAL OF THE ORDER DENYING RULE 3.851 MOTION**

Bogle raises the following seven claims on appeal: (1) he was denied due process and full and fair postconviction proceedings; (2) the trial court erred in denying his claim that he was deprived of his due process rights under the Fourteenth Amendment and his rights under the Fifth, Sixth, and Eighth Amendments because the State withheld evidence that was material and exculpatory in nature and/or presented false and misleading evidence and/or argument; (3) the trial court erred in denying his claim that he was denied effective assistance of counsel at the guilt phase in violation of the Sixth, Eighth, and Fourteenth Amendments; (4) the trial court erred in denying his claim that he was denied an adequate adversarial testing at the penalty phase of his trial in violation of the Sixth, Eighth, and Fourteenth Amendments; (5) the trial court erred in denying his claim that newly discovered evidence shows that his conviction is unconstitutionally unreliable; (6) the trial court erred in denying his claim that his trial counsel had a conflict of interest which violated his rights under the Fifth,

---

Bogle's trial. On remand, the trial court granted Bolge's motion for mitochondrial DNA. Bogle then filed a successive motion to vacate his conviction and sentence. On February 17, 2014, the trial court found that it lacked jurisdiction and accordingly held Bogle's successive motion in abeyance until appellate proceedings conclude.

Sixth, and Fourteenth Amendments; and (7) the trial court erred in denying his claim that he was denied a fair trial due to prosecutorial misconduct.

## I. Due Process and Full and Fair Postconviction Proceedings

## A. Motion to Disqualify

Bogle contends that the postconviction court, Judge Wayne Timmerman, erred in denying his motions to disqualify. Prior to the evidentiary hearing, the trial court denied Bogle's motion to disqualify—based on the defense's expectation to call Judge Timmerman's wife—as legally insufficient. Bogle sought review of the order denying his renewed motion to disqualify, and this Court dismissed Bogle's petition, finding that "[b]ecause neither Judge Timmerman nor his wife were material witnesses, the trial court did not abuse its discretion in denying Bogle's renewed motion to disqualify." Bogle v. State, 10 So. 3d 631 (Fla. 2009) (table). We do not disturb our prior finding that neither Judge Timmerman nor his wife were material witnesses in this case. Therefore, we affirm the postconviction court's denial of the motions to disqualify.[4]

---

4. The record does not support Bogle's assertion that Marcia Turley provided to the adoption attorney (who shared office space with Judge Timmerman when he was in private practice) that the father of her baby was Guy Douglas and that she was afraid that Douglas had killed Torres. We also reject Bogle's claim that the trial court erred in denying his motions to take Judge Timmerman's deposition.

## B. Refusal of Questioning and Testimony

Bogle claims that the trial court committed several errors in precluding certain questioning and testimony at the evidentiary hearing. We affirm trial court determinations of evidence admissibility "absent a showing of abuse of discretion." Randolph v. State, 853 So. 2d 1051, 1062 (Fla. 2003). Bogle argues that the trial court erred in refusing to allow the defense to impeach Agent Michael Malone and Steve Robertson, who reviewed Malone's work in this case, through questioning concerning acts of alleged misconduct. We find that the trial court properly sustained the objections. See Farinas v. State, 569 So. 2d 425, 429 (Fla. 1990) ("Evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness.").

Additionally, we reject Bogle's claim that the trial court erred in refusing to allow questioning of Karen Cox, who was the prosecutor in Bogle's case, pertaining to any alleged prosecutorial misconduct in other cases.[5] We also find that the trial court did not abuse its discretion in precluding Dr. Terry Melton's testimony on hair comparison because Dr. Melton was not qualified. See Simmons v. State, 934 So. 2d 1100, 1117 (Fla. 2006) ("A trial judge has the discretion to

---

5. We also conclude that the trial court properly found the unrelated case irrelevant as to State witness Patricia Bencivenga.

determine if a witness's qualifications render him or her an expert, and this determination will not be overturned absent clear error.").

Contrary to Bogle's claim, the trial court also did not err in precluding the questioning of Marcia Turley about her fear of Guy Douglas. Bogle's counsel was permitted to ask Turley "Is it fair to say you were scared of Guy Douglas?" and, "Was your fear of Mr. Douglas related to the fact that he made the threat immediately following the murder of Margaret Torres, was that partially why you were afraid of him?" Turley responded to both questions in the affirmative. We therefore deny relief on this claim.[6]

### C. Denials of Postconviction Discovery Requests

Bogle claims the trial court violated his due process rights by denying his postconviction discovery requests involving access to inmates' jail calls, access to the Florida offender DNA database, and errors and false testimony committed by Malone since Bogle's trial. The ruling of a postconviction court on a motion for discovery is reviewed for an abuse of discretion. Floyd v. State, 18 So. 3d 432, 446 (Fla. 2009). The trial court found and we agree that Bogle's requests involving both inmates' jail calls and the Florida offender DNA database were

---

6. Additionally, we conclude that the trial court did not abuse its discretion in limiting Brian Bogle's testimony, that the trial court properly sustained the State's objection during Gary Turley's testimony, and that Bogle has not demonstrated that the trial court reversibly erred in precluding the questioning of trial counsel regarding Roger Kelly's deposition.

overly broad without any specificity. In fact, it appears the defense was on a fishing expedition. Additionally, the trial court properly denied the request concerning Malone because it was improper impeachment material. We conclude that Bogle has failed to establish an abuse of discretion. See Farinas, 569 So. 2d at 429.

## II. Brady and Giglio Claims

Bogle contends that the trial court erred in denying his Brady[7] and Giglio[8] claims. This Court, in Franqui v. State, 59 So. 3d 82 (Fla. 2011), articulated the standard of review for Brady and Giglio claims as follows:

> Brady requires the State to disclose material information within its possession or control that is favorable to the defense. To demonstrate a Brady violation, the defendant has the burden to show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. To meet the materiality prong of Brady, the defendant must demonstrate "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ". . . [M]ateriality under Brady requires a probability sufficient to undermine confidence in the outcome." [For t]he materiality inquiry . . . ["]the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' " "It is the net effect of the evidence that must be assessed." "Although reviewing courts must give deference to the trial court's findings of historical fact, the ultimate question of whether evidence was material resulting in a due process violation is a

---

7. Brady v. Maryland, 373 U.S. 83 (1963).

8. Giglio v. United States, 405 U.S. 150 (1972).

mixed question of law and fact subject to independent appellate review."

In order to prove a <u>Giglio</u> violation, "a defendant must show that (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material." If the first two prongs are established, the false evidence is deemed material if there is any reasonable possibility that it could have affected the jury's verdict. The State must then "prove that the false testimony was not material by demonstrating it was harmless beyond a reasonable doubt." Under the harmless error test, the State must prove " 'there is no reasonable possibility that the error contributed to the conviction.' "

Both <u>Giglio</u> and <u>Brady</u> claims present mixed questions of law and fact. Thus, as to findings of fact, [the Court] defer[s] to the lower court's findings if they are supported by competent, substantial evidence. "[T]his Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court." We review the trial court's application of the law to the facts de novo.

<u>Franqui</u>, 59 So. 3d at 101-02 (citations omitted).

## A. Information Regarding an Accomplice

First, the trial court found that Bogle failed to show that the State possessed and failed to disclose information regarding Guy Douglas that was favorable to the defense. The record reveals a handwritten note composed by prosecutor Karen Cox which states: "talk to re: Guy Douglas confessed to being involved." Above the statement was the name "Marcia Baurle"[9] and "Guy Douglas 92-7731 Capias." We conclude that Bogle met his burden of showing under <u>Brady</u> that this note is

---

9. Marcia Baurle is also known as Marcia Turley.

- 10 -

favorable, exculpatory evidence that was suppressed by the State. At the evidentiary hearing, Cox had no recollection of a witness telling her at trial that Douglas was involved in the murder. Cox interpreted the note to mean that she was supposed to talk to somebody about whether or not Douglas confessed. Cox believed that the information was probably not provided by Marcia Turley; Cox did not recall speaking with Turley. Cox testified that had any other person confessed to the murder, she would have immediately turned it over to the defense.

Turley testified at the evidentiary hearing that when Douglas told her Bogle was brought in for questioning relating to Torres's murder, Douglas told Turley he was not worried because he was with her on the night in question. When Turley refuted his assertion, Douglas told her she did not need to say anything other than he was with her all night or they would be lucky to find Turley's body. Jeanne Bratton, Turley's sister, testified that subsequent to the murder, Turley told Bratton that Douglas's clothes were bloody. The trial court found Bratton to have little credibility.

The record also reveals an interoffice memorandum dated October 7, 1991, in which an employee of victim assistance for the State Attorney's Office wrote to Cox regarding the Bogle case:

> Katie Alfonso called today stating (she is sister of Vic) she spoke with
> a person named Andy, who was at bar with Bret[t] and a person
> named Guy, anyway seems Andy is telling people 2 were involved,
> Brett and Guy left the bar together.

At the evidentiary hearing, Cox had no recollection of what led her to believe that "Andy" was involved in the murder. Katie Alfonso testified at the evidentiary hearing that she did not recall speaking to "Andy," and that no one with first-hand knowledge told her two people were involved. Alfonso recalled a rumor circulating which suggested more than one person was involved because the crime was "so horrible." She further testified that she could have related the rumor to the memo's author. Bogle's trial counsel did not recall the memo.

We conclude that Bogle has demonstrated under <u>Brady</u> that the message from Alfonso regarding "Andy" is favorable, exculpatory evidence that was suppressed by the State. We observe that Bogle has not shown in postconviction any additional evidence pertaining to "Andy." As to Cox's handwritten note, Bogle's trial counsel believed that Douglas murdered Torres, and the defense investigated Douglas.

The trial court found that the disclosure of Cox's handwritten note and the memorandum relating a rumor of multiple persons involved in the murder do not create a reasonable probability that the result of the proceeding would have been different. We agree. We find that the evidence offered against Bogle at trial was strong: Bogle threatened Torres's life if she called the police concerning Bogle's breaking into Alfonso's house about 11 days before Torres's murder; Bogle repeated his threat several days later; Bogle left Club 41 in clean clothes about five

- 12 -

minutes after Torres left on the night of the murder; Bogle was seen in dirty clothes with his crotch wet approximately forty-five minutes later; and the DNA extracted from the semen in Torres's vagina was consistent with Bogle's DNA. We conclude that the note and memorandum, which were suppressed by the State, were not material because there is not a reasonable probability that, had the note and memo been disclosed to the defense, the result of the proceeding would have been different. In other words, there is no probability sufficient to undermine our confidence in the outcome. Accordingly, we deny this Brady claim as it relates to the note and memorandum.[10]

As an additional Brady claim, Bogle refers to another handwritten note which references Bogle and provides for Gary Turley to be "brought over." Cox and Detective Larry Lingo both acknowledged at the evidentiary hearing that they wrote parts of the note. Gary Turley, Marcia Turley's husband, testified at the evidentiary hearing that he observed Douglas driving Torres away from Club 41 on the night of the murder. Mr. Turley stated that he later saw Douglas's truck parked at the Beverage Castle[11] without any occupants. He also acknowledged a prior

---

10. We also deny Bogle's claim that because Cox possessed information of Douglas's confession and that more than one person was involved in the murder, she argued falsely at trial that the investigation was clear that Bogle killed Torres.

11. Presumably, the establishment Gary referred to was the "Beverage Barn."

statement in which he admitted that the truck he saw parked at the establishment might not have belonged to Douglas. He also testified that after the murder, his wife told him about Douglas's threatening her to provide him an alibi. The trial court found that Mr. Turley—who is serving a life sentence, has thirty-three felony convictions, and admitted to disliking Douglas—lacked credibility. We conclude that Bogle is not entitled to relief on this <u>Brady</u> claim.[12]

### B. Grand Jury Testimony

Bogle asserts another <u>Brady</u> violation regarding the State's failure to disclose the grand jury testimony to the defense. In denying this claim, the trial court found that any impeachment value would have been minor. Because "there is no pretrial right to inspect grand jury testimony," a <u>Brady</u> violation has not been demonstrated. <u>Brookings v. State</u>, 495 So. 2d 135, 137 (Fla. 1986).

### C. Jeffrey Tapp

Bogle also claims a <u>Brady</u> violation based on the State's failure to disclose State witness Jeffrey Trapp's criminal record and that Trapp admitted to violating his probation without consequences from the State. At Bogle's trial, Trapp testified that he was at the Red Gables Bar on the night of the murder, which his

---

12. We also reject Bogle's <u>Brady</u> claim which relies on a September 7, 1992, note showing that Judge Wayne Timmerman returned Cox's phone call. Bogle failed to raise below his <u>Giglio</u> claim relating to his assertion that Detective Lingo did not confirm Douglas's alibi; thus, this claim is procedurally barred. <u>See</u> <u>Green v. State</u>, 975 So. 2d 1090, 1105 (Fla. 2008).

probation forbade as a condition of community control. We find that no <u>Brady</u> violation has been established because we agree with the trial court that Bogle has not shown that Trapp's probation conditions were in effect on the night in question.

### D. Agent Malone

Bogle also contends that the State violated <u>Brady</u> by failing to furnish F.B.I. Agent Malone's bench notes to the defense. The trial court found that the notes were insufficient to undermine confidence in the proceedings and were unlikely to produce an acquittal on retrial because the notes have "minimal" value to the defense. At trial, Malone, an expert in hair and fibers, testified that one Caucasian pubic hair (Q-18) recovered from the debris of Bogle's pants was microscopically indistinguishable from Torres's pubic hair (K-6). This finding was consistent with Malone's report and confirmed by an examiner. Malone's bench notes, however, stated that Q-18 equaled K-7, which referred to Torres's head hair sample. Malone testified at the evidentiary hearing that this was a transcription error: his bench notes should have said that Q-18 equaled K-6. We find that no <u>Brady</u> violation has been demonstrated because Bogle has failed to establish that trial counsel attempted to obtain and the State suppressed Malone's notes. <u>See</u> <u>Peede v. State</u>, 955 So. 2d 480, 497 (Fla. 2007) (finding no <u>Brady</u> violation where the defense could have obtained the information in question with reasonable diligence).

### E. Testimony Regarding Bogle's Pants in Evidence

Bogle asserts in his next <u>Brady</u> claim that the State suppressed the fact that Bogle's pants were placed in a drying shed after Detective Lingo's collection of the pubic hair and that Detective Lingo removed evidence from the evidence room to conduct an investigation. Bogle relies on a Hillsborough County Sheriff's Office disciplinary report stating that Ronald Cashwell, a Crime Scene Technician, "placed damp clothing into Evidence without first ascertaining that the articles were sufficiently dried." A written request for discipline noted that Cashwell:

> should have taken extreme caution to insure that the pants were dry since crucial evidence could have been obtained and used to assist in the prosecution of the suspect. Instead, the pants could have become molded and the evidence severely damaged or destroyed.

In detailing the events, Cashwell made a written statement that "[t]he items placed in the shed are unable to be separate[d] from each other and could contaminate each other and the shed was full of other evidence drying."

At trial, F.B.I. Agent Malone was asked whether anyone else came "into contact with the pants from the time that they were put into property until the time that you took them out to collect this evidence." Malone answered, "No, they were sealed when I checked them out." Malone was not asked whether anyone else came into contact with the pants throughout the whole time they were in evidence. Thus, the disciplinary report, which indicates that a Crime Scene Technician

removed the pants from the evidence room <u>after</u> Malone collected the hairs, is consistent with Malone's trial testimony.

Bogle has not shown that the State suppressed evidence of contamination. The disciplinary report and Cashwell's statement on which Bogle relies do not show that any evidence was actually contaminated but convey that the evidence could have been contaminated or destroyed. Malone testified at the evidentiary hearing that he found no evidence of contamination on the hairs retrieved from Bogle's pants and that the disciplinary report did not cause him to change his opinion of the match. Even if Bogle met the first two prongs of <u>Brady</u>, showing favorable evidence and suppression, the materiality prong has not been satisfied. Accordingly, we find that Bogle has failed to establish a <u>Brady</u> violation.

Bogle additionally claims that prosecutor Cox violated <u>Giglio</u> because she knew Detective Lingo's testimony about the pants was false and misleading. The trial court denied this claim, finding the testimony unclear but not false. The trial court reasoned that there was no evidence presented that anyone touched the pants between the time they were sealed and placed in the evidence room until the pants were examined by Detective Lingo. Because we agree that Detective Lingo did not testify falsely, we deny this <u>Giglio</u> claim.

## F. DNA Analysis

Bogle also claims that Dr. Harold Deadman's trial testimony that he conducted restriction fragment length polymorphism (RFLP) DNA analysis in this case was false, violating Giglio. We agree with the trial court's conclusion that Dr. Deadman's testimony that he was "a supervisor" in the unit indicated that multiple people were involved in the DNA analysis and was not false or misleading. Therefore, we deny this Giglio claim.

Bogle also asserts a Brady claim because the defense did not receive a copy of the FBI file concerning the RFLP DNA testing. Bogle maintains that the file could have been used to challenge Dr. Deadman's credibility, the DNA analysis, and the investigation. The trial court found the value of the impeachment evidence disclosed in Dr. Deadman's file minimal and concluded that Bogle failed to demonstrate that the result of the proceeding would have been different had Dr. Deadman's file been disclosed.[13] After carefully reviewing the record, we conclude that even if the FBI file was suppressed and favorable to the defense, the materiality prong under Brady has not been met. Therefore, we affirm the trial court's denial of relief on this claim.

---

13. Contrary to Bogle's argument, the trial court did not employ an improper standard.

## G. Bogle's Injuries

Bogle raises a final <u>Giglio</u> claim alleging that prosecutor Cox knowingly argued falsely that the lacerations on Bogle's face could only be from the struggle with Torres because Cox was aware of Bogle's car accident. We agree with the trial court that the prosecutor argued reasonable inferences in light of the evidence presented. We therefore deny relief on this <u>Giglio</u> claim.

## III. Ineffective Assistance of Guilt Phase Counsel

Bogle contends that the trial court erred in denying his claim of ineffective assistance of counsel during the guilt phase. Following the United States Supreme Court's decision in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), this Court explained that for ineffective assistance of counsel claims to be successful, two factors must be established:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

<u>Bolin v. State</u>, 41 So. 3d 151, 155 (Fla. 2010) (quoting <u>Maxwell v. Wainwright</u>, 490 So. 2d 927, 932 (Fla. 1986)). Because both prongs of <u>Strickland</u> present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court's factual findings that are supported by competent,

substantial evidence, but reviewing the trial court's legal conclusions de novo. Dennis v. State, 109 So. 3d 680, 690 (Fla. 2012).

Bogle claims that his trial counsel failed to investigate his September 6, 1991, car accident. Specifically, Bogle asserts that trial counsel was deficient in failing to review medical records and photographs, speak with anyone who observed Bogle between the accident and the murder, retain an expert, and present evidence that he was physically incapable of committing the murder. The trial court denied this claim, observing that Bogle failed to provide any evidence at the evidentiary hearing that the car accident injury rendered him physically incapable of committing the murder.

At trial, no witnesses testified to observing any injuries on Bogle before he left Club 41 except Phillip Alfonso who saw a scar on Bogle's right side which Bogle claimed was from an accident. At the evidentiary hearing, Mary McFarland, who married Bogle on death row, testified that Bogle had injuries to his face a day before the murder and opined that there was no way Bogle was capable of committing the acts as alleged. Bogle's mother testified that the car accident punctured Bogle's lung, that he had a tube in his side, he had broken some of his ribs, his face was "all messed up . . . [on h]is forehead," and he was sore. She believed that she informed Bogle's trial counsel of photographs taken of Bogle at the hospital. Bogle's prior postconviction counsel obtained photographs pertaining

to Bogle's car accident from Bogle's civil lawyer. Bogle's trial counsel did not recall possessing Bogle's hospital photographs. Dr. Edward Willey, a forensic pathologist, testified at the evidentiary hearing that the lacerations Bogle sustained from the car accident most likely would not have healed completely within ten days. However, on cross-examination, Dr. Willey could not exclude the possibility that a preexisting laceration reopened on the day of the murder.

Even if guilt phase counsel was deficient in failing to effectively show that some of Bogle's scratches originated from his accident, we conclude that Bogle has not demonstrated prejudice. Bogle had motive to kill Torres and had threatened her life. Bogle's DNA was consistent with DNA found in the victim's vagina. A pubic hair found near the crotch of Bogle's pants matched Torres. Bogle has not established that counsel's showing his scratches were sustained in a car accident would have undermined confidence in the outcome of his case. Therefore, counsel's failure to make such a showing was not prejudicial, and we deny relief on this claim.

Bogle also claims his guilt phase counsel was deficient for failing to present Everett Smith's testimony relating to events on September 1, 1991. According to Bogle, Smith's testimony would have undermined motive for Bogle to kill Torres. In denying this claim, the trial court found that Smith's testimony would have had little substantive or impeachment value. At the evidentiary hearing, Smith testified

that neither Katie Alfonso nor Torres expressed any fear while being around Bogle, even when he was violent, and described a September 1, 1991, incident demonstrating this lack of fear.  We find that Smith's testimony would not have undermined Bogle's motive to kill Torres and conclude that trial counsel was not deficient for failing to present Smith's testimony at trial.

Bogle additionally claims that trial counsel was deficient for failing to present the deposition of Roger Kelly, who passed away before trial.  Bogle asserts that Kelly's deposition establishes that on the night in question, Torres was dancing with a man other than Bogle and arguing with Guy Douglas.  The trial court denied this claim, finding that the deposition could not legally be introduced as substantive evidence.  We agree.  Because Kelly's deposition was not admissible as substantive evidence, we deny Bogle's claim that his trial counsel was deficient in this regard.  See State v. Contreras, 979 So. 2d 896, 911 (Fla. 2008) ("[A] deposition that is taken pursuant to rule 3.220 is only admissible for purposes of impeachment and not as substantive evidence.") (citing Rodriguez v. State, 609 So. 2d 493 (Fla. 1992)).  Moreover, the deposition was not admissible as substantive evidence under Chambers v. Mississippi, 410 U.S. 284 (1973).

Bogle also claims that his trial counsel was deficient in failing to demonstrate that the hair comparison in this case was unreliable and flawed, failing

to acquire Agent Michael Malone's bench notes, and failing to retain an expert. At trial, Malone concluded as follows:

> In the debris reported as being from Mr. Bogle's pants, I was able to find one Caucasian pubic hair which microscopically matched the pubic hairs of Margaret Torres. In other words, it was microscopically indistinguishable from her's [sic] and, therefore, I concluded this one pubic hair from the pants was consistent with coming from Margaret Torres.

Malone acknowledged, on cross-examination, that the pubic hair was naturally removed, that there was no way to determine how long the hair had been removed, and that hair comparisons do not constitute a basis for absolute personal identification.

At the evidentiary hearing, Bogle proffered the deposition of mitochondrial DNA expert Dr. Terry Melton who criticized Malone for using potentially misleading words and making conclusions without conducting DNA testing on the sample. Dr. Melton did not state whether she would have been available to testify at Bogle's trial, nor did she know whether, at that time, labs were conducting mitochondrial DNA testing on hairs for criminal defense attorneys. The evidentiary hearing also revealed that studies relating to mitochondrial DNA and the proficiency of hair microscopic analysis were unavailable at that time. The trial court did not give Dr. Melton's testimony great weight.

Steven Robertson, an expert in the field of hair analysis and comparison, concluded at the evidentiary hearing that Malone's trial testimony matching

Torres's pubic hair and the hair from Bogle's pants was not inconsistent with his lab report, but was inconsistent with Malone's bench notes. Robertson determined that Malone testified "fairly" and within the bounds of his expertise. We conclude that Bogle has not demonstrated that the defense's failure to obtain Malone's bench notes was outside the broad range of reasonably competent performance under prevailing professional standards at the time of trial. See Long v. State, 118 So. 3d 798 (Fla. 2013). In addition, Bogle failed to present evidence that a mitochondrial DNA expert, such as Dr. Melton, or a microscopic hair analysis expert, would have been available to testify at trial, or in the preparation thereof. Accordingly, we deny relief on this claim.

Bogle next claims that his trial counsel was deficient in failing to request a Frye[14] hearing to challenge the DNA evidence and show that the F.B.I. did not follow accepted testing procedures. A Frye hearing determines whether an expert's scientific opinion is admissible. Zack v. State, 911 So. 2d 1190, 1197 (Fla. 2005). To be admissible, an expert opinion must be based on techniques that have been generally accepted by the relevant scientific community and found to be reliable. Id. (citing Frye, 293 F. at 1014). However, Frye is only utilized where the science at issue is new or novel. Id. at 1198. In denying this claim, the trial

_____

14. Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

court determined that Bogle failed to show that the RFLP DNA evidence would have been inadmissible at trial had counsel requested a Frye hearing.

At the evidentiary hearing, Dr. Randell Libby, an expert in human molecular genetics and forensics DNA analysis, testified that RFLP was not generally accepted in 1992; instead, RFLP was reviewed on a case-by-case basis. Although Dr. Libby maintained that there were inconsistencies in Bogle's case which raise a concern about the possibility of contamination or something else producing an inconsistent result, Dr. Libby could not identify any problems with the chain of custody, nor did he have direct knowledge of improper evidence storage causing degradation of evidence. Dr. Libby could not recall any previous case where he testified and the evidence was ruled inadmissible. Dr. Libby said he would have testified at a Frye hearing in this kind of case in 1991 and 1992.

Dr. Deadman opined at the evidentiary hearing that F.B.I. procedures employed in 1991 and 1992 for RFLP DNA examinations produced "very reliable" results and that F.B.I. lab procedures in RFLP DNA analysis in this case were generally accepted in the relevant scientific community. Dr. Martin Tracey, an expert in population genetics and DNA analysis, saw no indication of contamination, having reviewed Dr. Deadman's RFLP analysis in this case. Based on our review of the record, we conclude that Bogle has not demonstrated that trial

counsel was deficient for failing to request a <u>Frye</u> hearing. Therefore, we affirm the trial court's denial of relief.

In his final claim of ineffective assistance of guilt phase counsel, Bogle contends that his trial counsel was deficient in failing to impeach Phillip and Tammy Alphonso and Jeffrey Trapp. The Alphonsos did not testify at the evidentiary hearing. As noted above, Bogle has not established that Trapp's community control condition was still in effect on the night of the murder. We therefore deny relief, concluding that Bogle has not demonstrated that his trial counsel was deficient.

### IV. Ineffective Assistance of Penalty Phase Counsel

Bogle claims that his trial counsel was also ineffective during the penalty phase. To be entitled to relief on this claim, Bogle must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. "In the penalty phase context, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.' " <u>Sochor v. State</u>, 883 So. 2d 766, 771 (Fla. 2004) . "We do not require a defendant to show 'that counsel's deficient conduct more likely than not altered the outcome' of his penalty proceeding, but rather that he establish 'a probability sufficient to undermine confidence in [that] outcome.' "

Porter v. McCollum, 558 U.S. 30, 44 (2009) (quoting Strickland, 466 U.S. at 693-94).

This Court has stated that trial counsel has a duty to investigate mitigation. "In reviewing a claim that counsel's representation was ineffective based on a failure to investigate or present mitigating evidence, the Court requires the defendant to demonstrate that the deficient performance deprived the defendant of a reliable penalty phase proceeding." Simmons v. State, 105 So. 3d 475, 503 (Fla. 2012) (quoting Hoskins v. State, 75 So. 3d 250, 254 (Fla. 2011)). When this Court reviews a trial court's resolution of a Strickland claim, we defer to the trial court's factual findings, but review de novo the trial court's legal conclusions. Id.

## A. Challenging the Aggravating Factors

Bogle claims that his trial counsel was deficient in failing to present any evidence challenging the prior violent felony and avoid arrest aggravating factors relating to September 1, 1991. The evidence at trial showed that on that day Bogle and Torres argued, Bogle broke through Katie Alfonso's screen door, pushed Katie out of the way, and grabbed Torres's arm to remove the telephone from her hand as she tried to call 911. Bogle, on two separate occasions, threatened Torres that if she pressed charges, she would not live to tell about it.

For this claim, Bogle relies on the evidentiary hearing testimony of Everett Smith, who detailed his version of the events on September 1. As noted above, we

- 27 -

found that Smith's testimony would not have undermined Bogle's motive to kill Torres and that trial counsel was not deficient for failing to present Smith's testimony during the guilt phase. We additionally conclude that trial counsel was not deficient for failing to present Smith's testimony during the penalty phase.

## B. Investigating and Presenting Mitigation Evidence

Bogle next claims his trial counsel was deficient in the investigation and presentation of mitigation evidence. At the second penalty phase, through the testimonies of a psychiatrist and seven witnesses consisting of Bogle's family and friends, the defense established that:

> Bogle had been subjected to physical and mental abuse as a child, had used drugs at his father's urging from the time he was five or six years old, was under the influence of alcohol at the time of the murder, had a personality disorder and suffered from some mental disturbance at the time of the murder, was kind to others, and had been injured in an automobile accident a week before the murder.

Bogle, 655 So. 2d at 1105.[15] In analyzing the mitigation evidence, the trial court:

> gave some weight to the statutory factor of impaired capacity but stated that substantial impairment had not been proven; gave substantial weight to Bogle's family background; little weight to his alcohol and drug abuse; gave some weight to his good conduct during trial; gave some, but not a great deal, of weight to his kindness to others; and gave no weight to his involvement in an automobile accident.

---

15. In addition to the psychiatrist, Bogle's penalty phase counsel also retained a psychologist for mitigation purposes. Both experts evaluated Bogle prior to the penalty phase. We reject Bogle's claims that his counsel failed to provide critical information to his expert and request any psychological testing.

- 28 -

Id. at 1105-06.

We observe that the postconviction evidentiary hearing included some of the same witnesses who testified at the second penalty phase and that much of the evidence was cumulative. See Troy v. State, 57 So. 3d 828, 835 (Fla. 2011) ("[A] defendant's claim that he was denied effective assistance of counsel because of counsel's failure to present mitigation evidence will not be sustained where the jury was aware of most aspects of the mitigation evidence that the defendant claims should have been presented."). Bogle's forensic psychologist concluded at the evidentiary hearing that Bogle had a significant mental illness and that he was under the influence of mental or emotional disturbance in some form at the time of the murder.

We reject Bogle's characterization that he presented substantial mitigation in postconviction and conclude that Bogle has not established prejudice under Strickland. We note that, in this case, the trial court found that the following aggravating factors were applicable: prior violent felony, the murder was committed while engaged in the commission of a sexual battery, avoid arrest, and HAC. See Gonzalez v. State, 136 So. 3d 1125, 1167 (Fla. 2014) ("HAC and prior violent felony are among the weightiest aggravators in Florida's statutory scheme."). Because we conclude that Bogle has not established that his trial

counsel was ineffective as to investigating and presenting mitigation evidence, we deny relief.[16]

## V. Newly Discovered Evidence

Bogle claims that the trial court erred in denying his claim of newly discovered evidence. This Court has set forth a two-prong test that a defendant must satisfy in order to obtain relief in cases involving newly discovered evidence:

> To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So. 2d 512, 521 (Fla. 1998) (Jones II). Newly discovered evidence satisfies the second prong of the Jones II test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." Jones II, 709 So. 2d at 526 (quoting Jones v. State, 678 So. 2d 309, 315 (Fla. 1996)). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence. See Jones v. State, 591 So. 2d 911, 915 (Fla. 1991) (Jones I).

Marek v. State, 14 So. 3d 985, 990 (Fla. 2009). The postconviction court must consider the effect of the newly discovered evidence, in addition to all of the admissible evidence that could be introduced at a new trial. Swafford v. State, 125 So. 3d 760, 775-76 (Fla. 2013). Bogle's claim of newly discovered evidence

---

16. We expressly reject Bogle's contention that his trial counsel was deficient for failing to speak to his family members and friends and for failing to secure Brian Bogle's live testimony during the penalty phase.

consists of Y-STR[17] DNA testing of Torres's fingernails. The State conducted postconviction STR DNA testing from the vaginal swabs and Torres's underwear.

## A. Testing of Torres's Fingernails

In 2007, the underside of Torres's fingernail clippings from both hands were swabbed for Y-STR testing. A male profile was obtained, which appeared to be a mixture consistent with at least two male DNA present—one major and one minor contributor—at all seventeen markers. Bogle's expert was unable to identify the genetic material source of the DNA or when it was deposited. Bogle's experts excluded Bogle as a contributor to the mixture detected from the fingernails.

We agree with the trial court's finding that Bogle has satisfied the first prong of Jones II. Regarding the second prong, as stated by the trial court, the absence of Bogle's DNA beneath Torres's fingernails is relevant to counter the State's argument that Bogle's "fresh" scratches were caused by Torres during their struggle. It certainly cannot be said, however, that this evidence establishes that the contributor to this DNA mixture was actually the person who murdered Torres. Moreover, it cannot be determined whether Bogle's DNA was present on Torres's fingernails at her death, approximately sixteen years before they were swabbed. We conclude that the trial court correctly found that this evidence is not of such a nature that it would probably produce an acquittal on retrial.

---

17. "STR" stands for short tandem repeat.

### B. Testing of the Vaginal Swabs and Torres's Underwear

Patricia Bencivenga, a crime laboratory analyst for the Florida Department of Law Enforcement (FDLE), conducted STR DNA testing on the four wood sticks of the vaginal swabs in Bogle's case, on the swab packaging, and on Torres's underwear. Bencivenga obtained a mixture DNA profile of only two profiles: a major contributor was male and a small contributor which matched Torres. The major male contributor was then run through the Combined DNA Index System (CODIS), which made a hit on Bogle. After conducting DNA testing on a known Bogle profile, Bencivenga concluded that the major contributor was consistent with Bogle's profile and the minor was consistent with Torres's profile.

At all thirteen areas tested, Bogle's DNA profile matched the DNA of the major male contributor on the vaginal swabs. The frequency of the occurrence of that profile is approximately 1 in 45 quadrillion Caucasians, one in 8.1 quintillion African-Americans, and 1 in 81 quadrillion Southeastern Hispanics.[18] After conducting DNA testing on Torres's underwear, Bencivenga found a profile of a mixture at one area: one of Torres and one consistent with Bogle's profile. Guy Douglas was excluded in postconviction as the source of the foreign DNA profile

_____

18. Dr. Libby, testifying for the defense, computed the statistical probability with considering the common alleles as Caucasians as 1 in 43,000. The trial court found that Dr. Libby was not as credible as Bencivenga.

from the vaginal swabs and excluded as a contributor to the mixed DNA profile obtained from Torres's underwear.[19]

The trial court found that because the prosecution's evidence that Torres was murdered during a sexual assault was "very strong," evidence that Bogle's DNA profile was the sole match to the semen found on the vaginal swabs and her underwear was "highly relevant and highly prejudicial." We conclude that it is significant that Bogle's DNA profile matched the DNA of the major male contributor on the vaginal swabs from Torres. We note that Detective Lingo testified that Bogle denied having sex with Torres in his interview on or about September 14, 1991. Bogle, therefore, has not demonstrated that he is entitled to relief on his claim of newly discovered evidence.[20]

## VI. Conflict of Interest

Bogle asserts that the trial court erred in denying his claim that his trial counsel had conflicts of interest which violated his right to present a defense and to confront and cross-examine witnesses. In denying this claim, the trial court found

---

19. Contrary to Bogle's suggestion that the trial court directed that Douglas's DNA sample be acquired, the record reveals that Douglas voluntarily provided a DNA sample.

20. We reject Bogle's unsupported claims that the results of the State's STR DNA testing conducted in postconviction is inadmissible and that Detective Lingo tampered with evidence. Bogle has not shown that there is a probability that someone tampered with evidence. See Armstrong v. State, 73 So. 3d 155, 171 (Fla. 2011).

that Bogle failed to show that there was an actual conflict of interest that adversely affected his representation.

In Cuyler v. Sullivan, 446 U.S. 335, 350 (1980), the United States Supreme Court held that "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Here, Bogle contends that the Public Defender's Office representation of Guy Douglas, Jeffrey Trapp, and Margaret Torres created an impermissible conflict of interest. We deny relief on this claim because Bogle has failed to show that an actual conflict of interest existed.

## VII. Prosecutorial Misconduct

Bogle asserts that the trial court erred in denying his claim of prosecutorial misconduct.[21] We agree with the trial court's determination that this claim is procedurally barred. See Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003) ("We conclude that Spencer's substantive claims of prosecutorial misconduct could and

---

21. Bogle complains of the prosecutor's reference to the FBI Crime Laboratory as "the greatest crime laboratory in the world." He also complains of statements that law enforcement "did everything they could in this case," "followed every lead," and that the investigation was "very thorough" and "didn't contradict what was already clear." Bogle also complains of the statement, "[y]ou can't judge this man [Bogle] or expect this man to behave within the confines of the ordinary person. You can't expect a person who is capable of doing what he did to Margaret Torres to act as you would expect an ordinary human being to act," and "[i]t's not like a pubic hair in the crotch of the pants he [Bogle] was wearing."

should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion.").

Bogle additionally argues that his trial counsel was ineffective by failing to object to the alleged prosecutorial misconduct. Bogle relies on Ruiz v. State, 743 So. 2d 1, 8 (Fla. 1999), in which we reversed a defendant's convictions and sentences due to the trial being "permeated by egregious and inexcusable prosecutorial misconduct." We conclude that the prosecutor's comments in this case were fair comments on the evidence presented at trial. Accordingly, we deny relief on this claim. See Spann v. State, 985 So. 2d 1059, 1068 (Fla. 2008) (providing that counsel cannot be deemed ineffective for failing to object to a fair comment which is based on the evidence presented during trial).

## HABEAS PETITION

In the petition for a writ of habeas corpus, Bogle claims that his appellate counsel was ineffective on direct appeal for failing to raise: (1) a due process claim regarding the felony-murder jury instruction with the underlying felony of sexual battery; (2) a due process claim pertaining to the trial court's refusal to instruct the jury on hair analysis; (3) that the trial court erred in instructing and considering inapplicable aggravating factors; (4) that the trial court's admission of gruesome photographs violated his constitutional rights; (5) that the trial court violated the principles of Lockett v. Ohio, 438 U.S. 586 (1978), and Hitchcock v. Dugger, 481

U.S. 393 (1987); and (6) a prosecutorial misconduct claim.  Aside from his various

claims of ineffectiveness on the part of appellate counsel, Bogle raises a claim that

Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536

U.S. 584 (2002).

## I.  Ineffective Assistance of Appellate Counsel

Consistent with the Strickland standard, to grant habeas relief based on

ineffectiveness of appellate counsel, this Court must determine:

> first, whether the alleged omissions are of such magnitude as to
> constitute a serious error or substantial deficiency falling measurably
> outside the range of professionally acceptable performance and,
> second, whether the deficiency in performance compromised the
> appellate process to such a degree as to undermine confidence in the
> correctness of the result.

Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986).

## A.  Felony-Murder Instruction

Bogle contends that his appellate counsel was ineffective in failing to claim

that the trial court erred regarding the jury instruction on felony murder.  Bogle

acknowledges that his trial counsel did not object to the instruction.  The

indictment charged Bogle with first-degree murder under theories of both

premeditation and felony-murder, with the underlying felony of sexual battery.

The trial court instructed the jury under both theories and the jury rendered a

general verdict.  On direct appeal, we determined that the aggravator "committed

while engaged in the commission of a sexual battery" was proven beyond a reasonable doubt. Bogle, 655 So. 2d at 1108.

Bogle has failed to demonstrate that it was fundamental error for the trial court to instruct the jury on felony murder when he was properly charged under that theory and the evidence was sufficient to support the commission of the underlying offense. Consequently, appellate counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim. Kokal v. Dugger, 718 So. 2d 138, 142 (Fla. 1998). Accordingly, we deny relief on this claim.

### B. Requested Jury Instruction on Hair Analysis

Bogle claims that his appellate counsel was ineffective for failing to argue that the trial court erred in refusing to allow the following requested jury instruction on hair analysis:

> [1.] Hair evidence must meet the following requirement: the circumstances must be such that the hair could have been transferred between the victim and defendant only at the time that the crime was committed.
> [2.] Hair analysis and comparison are not absolutely certain and reliable. Although hair comparison analysis may be persuasive, it does not result in identifications of absolute certainty.

Had the claim been raised, appellate counsel would have been required to prove the following three elements:

> (1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.

- 37 -

Stephens v. State, 787 So. 2d 747, 756 (Fla. 2001) (footnotes omitted). This criteria has not been demonstrated. We conclude that Bogle has not shown that the trial court abused its discretion in denying the requested jury instruction. See Hudson v. State, 992 So. 2d 96, 112 (Fla. 2008) (providing that a trial court's denial of special jury instruction is reviewed for abuse of discretion). Thus, appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. Kokal, 718 So. 2d at 142.

## C. Inapplicable Aggravating Factors

Bogle contends that his appellate counsel was ineffective for failing to claim that the trial court erred in instructing the jury on, and in improperly considering, inapplicable aggravating factors. However, on direct appeal, Bogle raised a claim that the aggravators were inapplicable, which we decided adversely to him. Bogle, 655 So. 2d at 1108-09. As a result, this claim is procedurally barred. See Bryan v. Dugger, 641 So. 2d 61, 65 (Fla. 1994).

## D. Autopsy Photographs

Bogle claims that his appellate counsel was ineffective for failing to argue that the trial court erred in admitting autopsy photographs. As to the admissibility of photographs:

> This Court has long followed the rule that photographs are admissible
> if they are relevant and not so shocking in nature as to defeat the value
> of their relevance. Where photographs are relevant, "then the trial

judge in the first [instance] and this Court on appeal must determine whether the gruesomeness of the portrayal is so inflammatory as to create an undue prejudice in the minds of the jury and [distract] them from a fair and unimpassioned consideration of the evidence." We have consistently upheld the admission of allegedly gruesome photographs where they were independently relevant or corroborative of other evidence.

Looney v. State, 803 So. 2d 656, 669-70 (Fla. 2001) (quoting Czubak v. State, 570 So. 2d 925, 928 (Fla. 1990)). Autopsy photographs may be admissible when used to "illustrate the medical examiner's testimony and the [victim's] injuries." Pope v. State, 679 So. 2d 710, 713-14 (Fla. 1996). The admission of the photographs is within the trial court's discretion and will only be reversed when an abuse of discretion is shown. Harris v. State, 843 So. 2d 856, 864 (Fla. 2003).

Trial counsel raised objections as to the admission of autopsy photographs. The trial court admitted four photographs while excluding the others for being too gruesome and duplicitous. The medical examiner opined that Torres died from blunt impact head trauma with skull fractures and lacerations of the brain after being struck seven times by a stone. The medical examiner utilized the admitted photographs for his testimony in explaining Torres's injuries. We conclude that Bogle has failed to establish that the trial court abused its discretion in admitting the autopsy photographs. Thus, appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. Kokal, 718 So. 2d at 142.

### E. Trial Court's Prevention of Mitigation Evidence

Bogle additionally claims that appellate counsel was ineffective in failing to claim that the trial court prevented the presentation of mitigation evidence in violation of Lockett, 488 U.S. 586, and Hitchcock, 438 U.S. 393. Bogle relies on one question that his trial counsel sought to ask of mental health expert Dr. Arturo Gonzalez: "Were you able to substantiate [Bogle's] drug use from his own family members prior to September 12, 1991?" The State raised a relevance objection, which the trial court sustained. Because counsel for Bogle did not make a proffer to the trial court or offer to make a proffer, the issue was unpreserved. See Blackwood v. State, 777 So. 2d 399, 410-11 (Fla. 2000); Lucas v. State, 568 So. 2d 18, 22 (Fla. 1990). Because appellate counsel is not ineffective for failing to raise issues that were not preserved for appeal, Groover v. Singletary, 656 So. 2d 424, 425 (Fla. 1995), we deny relief on this claim.

### F. Prosecutorial Misconduct

In his final claim of ineffectiveness of appellate counsel, Bogle claims that his appellate counsel was ineffective for failing to raise a claim of prosecutorial misconduct. This claim attempts to reargue claims of prosecutorial misconduct that were already raised in his postconviction motion. See Swafford v. Dugger, 569 So. 2d 1264, 1266 (Fla. 1990) ("Allegations of ineffective assistance of appellate counsel may not be used to evade the rule against using habeas corpus as

a second appeal."). Because trial counsel did not object to the prosecutor's comments, appellate counsel is not ineffective for failing to raise issues which were not preserved for appeal. Groover, 656 So. 2d at 425.

## II. Florida's Capital Sentencing Scheme

Bogle asserts that Florida's capital sentencing scheme is unconstitutional under Ring, 536 U.S. 584, and Hurst v. Florida, 136 S. Ct. 616 (2016). Bogle's first-degree murder conviction and sentence of death were final in 1995, before the Supreme Court decided Ring. We acknowledge that Hurst v. Florida, in which the United States Supreme Court found Florida's death penalty scheme defective to the extent that a jury must at least "make a specific factual finding with regard to the existence of mitigating or aggravating circumstances," supporting a death sentence in order to preserve the Sixth Amendment right to a jury trial, is an extension of Ring. 136 S. Ct. at 622. Bogle is not, however, entitled to Hurst relief because Hurst does not apply retroactively to cases that were final before Ring was decided. See Asay v. State, 41 Fla. L. Weekly S646, S652 (Fla. Dec. 22, 2016). Therefore, we deny relief on this claim.[22]

---

22. We deny Bogle's remaining claims, which should have been raised on direct appeal or in his postconviction motion. See Wyatt v. State, 71 So. 3d at 112 n.20.

**CONCLUSION**

In light of the foregoing, we affirm the trial court's denial of relief on Bogle's amended motion to vacate his conviction of first-degree murder and sentence of death, and we deny Bogle habeas relief.

It is so ordered.

QUINCE, J., concurs.
LABARGA, C.J., and LEWIS, CANADY, and POLSTON, JJ., concur in result.
PARIENTE, J., concurs in part and dissents in part with an opinion.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring in part and dissenting in part.

For the reasons set forth in my concurring in part and dissenting in part opinion in Asay[23] and elaborated on in Gaskin,[24] I would grant Bogle a new penalty phase under Hurst.[25]

Accordingly, I dissent from the majority's conclusion to affirm Bogle's sentence of death.

---

23. Asay v. State, 41 Fla. L. Weekly S646 (Fla. Dec. 22, 2016).

24. Gaskin v. State, No. SC15-1884 (slip op. issued Fla. Jan. 19, 2017).

25. Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016); see Hurst v. Florida, 136 S. Ct. 616 (2016).

Two Cases:

An Appeal from the Circuit Court in and for Hillsborough County,
     Wayne S. Timmerman, Judge - Case No. 291991CF012952000AHC
And an Original Proceeding – Habeas Corpus

Linda McDermott and Martin J. McClain of McClain & McDermott, P.A., Estero, Florida,

    for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Candance M. Sabella, Chief Assistant Attorney General, Tampa, Florida,

    for Appellee/Respondent