# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

STEPHEN JOSEPH PALEVEDA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-0980

———————————————

January 23, 2026

Appeal from the Circuit Court for Hillsborough County; Barbara Twine Thomas, Judge.

Blair Allen, Public Defender, and Gary R. Gossett, Jr., Special Assistant Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Taylor A. Schell, Assistant Attorney General, Tampa, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

On this direct appeal of the final judgment, Stephen Paleveda challenges his convictions for leaving the scene of a crash with death or injury (count one), DUI manslaughter (count two), and vehicular homicide (count three).[1]  He argues that the trial court erred in denying his motion for judgments of acquittal on all three counts because the

———

[1] Paleveda was also convicted of resisting an officer without violence, but he does not challenge the conviction or sentence on that count.

State failed to prove that he was the driver of the vehicle that caused the accident. He further argues that as to count one, the court erred by refusing to modify the standard jury instruction to account for the fact that the victim here died instantly. We affirm.

After Paleveda got drunk at a wedding, his girlfriend drove the two of them home in his Ford F-350. But when they arrived at the house, Paleveda snatched the keys from her and then drove off to a bar where he drank some more.

A civilian spotted him driving irregularly and notified police, who issued an alert. Near downtown Tampa, he drove *up* an exit ramp for the Selmon Crosstown Expressway and torpedoed directly into the path of oncoming traffic. Within moments his F-350 slammed head-on into a much smaller pickup. A driver whom that pickup had just passed saw the crash, stopped her car twenty to thirty feet back, and quickly got out. She saw Paleveda standing in the far-right traffic lane. He was facing her, and her eyes locked on him briefly. He then spun away from her and ran down the exit ramp.

The eyewitness went to the smaller pickup, opened the passenger door, and shook the arm of the driver, the only occupant. Getting no response, she went around the back of the pickup to get to the driver's side; she could not get to him by going around the front. Reaching in through the open driver's window, she checked for a pulse. He didn't have one. According to the forensic pathologist, he had died instantly on impact from internal decapitation. In other words, "His head was ripped off the rest of the body even though the outside surfaces were still there." Soon both trucks burst into flames:

2



On the hulk of the F-350, the driver's door was the only door open, and no one else was found in that truck. It took several days to identify the charred remains of the smaller pickup's driver.

The police detained Paleveda within minutes of the crash. He told them that he had had an argument with his girlfriend and that he had been in an accident. Bloody and reeking of alcohol, he swayed and slurred and refused to participate in field sobriety exercises. When he refused to put his hands behind his back, three officers were required to restrain him. At the hospital where he was taken for treatment, his initial blood draw showed a blood alcohol level more than three times the legal limit.

Paleveda's defense at trial was that although he was in the accident and although he owned the F-350, the State had failed to prove beyond a reasonable doubt that he—rather than someone else—had been the driver at the time. Specifically, he argued that the State had failed to exclude the possibility that his girlfriend had been driving.

Paleveda's then-former girlfriend, however, testified that after the wedding, Paleveda had driven off in the F-350 by himself and that she

had not seen him or driven the truck again that night. When officers went to speak with her five days after the accident, in part to ascertain whether she had been involved, they observed no injuries. The eyewitness to the crash testified that she had seen no one in or near the F-350 but Paleveda. The State also introduced expert testimony that Paleveda's injuries (including those to his upper left shoulder and his right hip) were consistent with his having been the driver of the F-350. The trial court denied Paleveda's motion for judgment of acquittal.

Paleveda argued that the trial court should modify Florida Standard Jury Instruction (Criminal) 28.4 (Leaving the Scene of a Crash Involving [Death] [Serious Bodily Injury] [Injury]), predicated here on sections 316.027(2)(c) and 316.062, Florida Statutes (2018), to take into consideration that the victim had died immediately and that no police had yet arrived on the scene. Paleveda wanted the court to instruct the jury that because someone had died and no police had been on-scene, he had been free to leave the scene to find the nearest police station so he could report the accident. Paleveda asked that the court instruct the jury as follows:

> 28.4 Leaving the Scene of a Crash Involving Death (Count 1)
>
> To prove the crime of Leaving the Scene of a Crash Involving Death, the State must prove the following four elements beyond a reasonable doubt:
>
> 1. Stephen Paleveda was the driver of a vehicle involved in a crash occurring on public or private property resulting in death of [Victim].
>
> 2. Stephen Paleveda knew that he was involved in a crash.
>
> 3. Stephen Paleveda knew, or should have known from all of the circumstances, including the nature of the crash, of the injury or death of the person.
>
> *4. Stephen Paleveda willfully failed to stop at the scene of the crash or as close to the crash as possible and failed to <u>either</u>*

4

*remain at the scene or to forthwith report the crash to the nearest office of a duly authorized police authority and provide identifying information.*

(Emphases added.)[2]

As support for his position, Paleveda relied on the first comment to instruction 28.4, which provides:

> Element #4 will need to be modified in cases where someone died because the deceased cannot receive information or assistance to which he or she is entitled under § 316.062(1), Fla. Stat. The revised instruction on element #4 will also depend on whether a police officer is present. In a case where someone died and no police officer was present, § 316.062(2), Fla. Stat., requires the driver of a vehicle involved in the crash to forthwith report the crash to the nearest office of a duly authorized police authority and provide the information specified in § 316.062(1), Fla. Stat.

The trial court denied Paleveda's request and disagreed with his interpretation of the comment. The court observed that the obligation "to forthwith report the crash" when no police officer was present did not necessarily contemplate leaving the scene and, in any event, could not be read to authorize leaving the scene as an *alternative* to remaining at the scene to fulfill the requirements of section 316.062. The court ultimately gave its own slightly modified version of the standard instruction, which tweaked element #4 to require that a defendant at least check on the

---

[2] As to element #4, the standard instruction provides:

4. (Defendant) willfully failed to immediately stop at the scene of the crash or as close to the crash as possible and failed to remain until [he] [she] had completed two things:

a. given identifying information to [(victim)] [the driver] [an occupant] [a person attending the vehicle] and to any police officer investigating the crash;

and

b. rendered reasonable assistance to (victim).

5

victim to "determine if such assistance [as required by section 316.02] appears to be necessary" before leaving the scene to go to the police station to report the accident:

> To prove the crime of Leaving the Scene of a Crash Involving Death, the State must prove the following four elements beyond a reasonable doubt:
>
> 1. Stephen Paleveda was the driver of a vehicle involved in a crash occurring on public or private property resulting in death of [Victim].
>
> 2. Stephen Paleveda knew that he was involved in a crash.
>
> 3. Stephen Paleveda knew, or should have known from all the circumstances including the nature of the crash of the injury to or death of the person.
>
> *4. a. Stephen Paleveda willfully failed to stop at the scene of the crash or as close to the crash as possible or to forthwith report the crash to the nearest office of a duly authorized police authority and provide identifying information.*
>
> *and*
>
> *b. Stephen Paleveda willfully failed to render "reasonable assistance" to the injured person or to determine if such assistance appeared to be necessary.*
>
> *If the State proves that Stephen Paleveda willfully failed to give any part of the "identifying information" or willfully failed to give reasonable assistance, the State satisfies this element of the offense.*

(Emphasis added.)

## Discussion

The trial court did not err in denying either Paleveda's motion for judgments of acquittal or his request for a modified instruction. We review de novo the court's denial of the motion for judgments of acquittal. *See Durousseau v. State*, 55 So. 3d 543, 556 (Fla. 2010) ("A trial court's denial of a motion for judgment of acquittal is reviewed de novo to determine solely if the evidence is legally sufficient."). In moving

6

for a judgment of acquittal, a defendant admits all the facts introduced into evidence. *Pearce v. State*, 880 So. 2d 561, 571–72 (Fla. 2004). Further, all reasonable inferences from those facts must be viewed in the light most favorable to the State. *Id.* at 572. Given the eyewitness testimony and other supporting evidence recounted above, we do not belabor the obvious propriety of the court's denial of Paleveda's motion.

We review for an abuse of discretion the trial court's refusal to modify standard instruction 28.4 as Paleveda requested. *See Stephens v. State*, 787 So. 2d 747, 755–56 (Fla. 2001). Mindful that modification is required only when "(1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing," *Bogle v. State*, 213 So. 3d 833, 853 (Fla. 2017) (quoting *Stephens*, 787 So. 2d at 756), we readily conclude that no abuse of discretion occurred here because Paleveda's proposed instruction was contrary to sections 316.027(2)(c) and 316.062.

Section 316.027(2)(c), the statute under which Paleveda was convicted, provides:

> (c) The driver of a vehicle involved in a crash occurring on public or private property which results in the death of a person shall immediately stop the vehicle at the scene of the crash, or as close thereto as possible, *and shall remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062.*

(Emphasis added.) And section 316.062 requires:

> (1) The driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his or her name, address, and the registration number of the vehicle he or she is driving, and shall upon request and if available exhibit his or her license or permit to drive, to any person injured in such crash or to the driver or

7

occupant of or person attending any vehicle or other property damaged in the crash and shall give such information and, upon request, exhibit such license or permit to any police officer at the scene of the crash or who is investigating the crash and shall render to any person injured in the crash reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary, or if such carrying is requested by the injured person.

(2) In the event none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (1), and no police officer is present, the driver of any vehicle involved in such crash, *after fulfilling all other requirements of s. 316.027 and subsection (1), insofar as possible on his or her part to be performed*, shall forthwith report the crash to the nearest office of a duly authorized police authority and submit thereto the information specified in subsection (1).

(Emphasis added.)

Inherent in the requirement that one remain at the scene until he or she has both given specific information to an injured person who is in a condition to receive it and rendered "reasonable assistance" to an injured person is a requirement *that one remain at the scene at least until he or she has ascertained the condition of the other person(s) involved in the accident.* Thus, the trial court correctly concluded that under the plain language of section 316.062(2), Paleveda could not legally have left the scene—not even to report the accident to the nearest police station—without *first* ascertaining the condition of the smaller pickup's occupant. The comment to instruction 28.4 merely acknowledges the futility of a statutory requirement to give information or render reasonable assistance to a person who is dead—it in no way excuses the statutory requirement to ascertain that person's condition at the outset.

8

Our supreme court has observed that "Florida law imposes an affirmative duty on a driver to," among other things, "stop [and] render aid." *State v. Dumas*, 700 So. 2d 1223, 1225 (Fla. 1997) (citing § 316.062, Fla. Stat. (1995)).  It observed further that "[t]he fact that a death rather than an injury has occurred does not trigger a different set of duties." *Id.*  Here, Paleveda did not stop.  He ran, leaving it to others to render any aid.  To be sure, the victim here died instantly.  But Paleveda didn't have a copy of the pathologist's report before he fled down the exit ramp, and the reasonable inference from the evidence is that he didn't stick around to find it out for himself.

In sum, the jury here reasonably determined after being properly instructed that Paleveda was responsible for this tragedy and then fled the scene.  We affirm the judgment in all respects.

LUCAS, C.J., and MORRIS, J., Concur.

————————————————

Opinion subject to revision prior to official publication.

9